Edmund M. PARKER, d/b/a Parker Glass Company et al., Appellants,

v.

Jim M. POTTS, Appellee.

No. 16174.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 6, 1961.

Rehearing Denied Feb. 10, 1961.

Gragg & Storey, Akin & Vial and Henry D. Akin, Jr., Dallas, for appellants.

Odeneal & Odeneal and William C. Odeneal, Jr., Dallas, for appellee.

MASSEY, Chief Justice.

This is an appeal from a judgment rendered plaintiff for an amount as compensation for personal services as a salesman for the defendants.

Judgment affirmed.

The cause of action of plaintiff Potts arose about the same time as somewhat analogous causes of action in behalf of a Mr. Thomas and a Mr. Crayton. The cause of action of each was against the same defendants. Notice should be taken as to certain operations or modes of procedure on the part of the defendants, particularly as applied to the period from late 1956 up to date of October 25, 1957, when Potts severed his relationship with them.

By contracts dated January 1, 1957, Edmund M. Parker became the operator of a business known as Service Glass Company of Dallas, Inc., a corporation. Prior to that time Parker had been in the glass business, doing business in the name of Parker Glass & Mirror Company, a *proprietorship, sometimes called* Parker Glass Company. Prior to date of the aforesaid contracts, a Mr. Thomas owned and operated the Service Glass Company. There had been incorporated but never operated a corporation bearing the name of Service Glass Company of Dallas, Inc. Mr. Thomas had originated this corporation the early part of 1956 for possible future expansion. In the transaction whereby Parker became owner and operator, Thomas transferred all the assets of the proprietorship, Service Glass Company, to the corporation, Service Glass Company of Dallas, Inc., and transferred the whole of the stock and assets of said corporation to Parker. Parker assumed the position of President of the corporation. After January 1, 1957, the Service Glass Company of Dallas, Inc., was "supposed to have been" a wholesale glass sales operation and nothing more, the Parker Glass & Mirror Company being in the retail glass installation and sales business, plus some minor wholesale sales. There were some uncompleted contracts which had been Thomas' contracts while operating as Service Glass Company and until the completion of the work provided to be performed under these contracts the glaziers who were working continued to perform.

Actually, as applied to Potts' cause of action, the foregoing is immaterial in that it is not disputed that he was entitled to be compensated for his services as though the Service Glass Company of Dallas, Inc., and the Parker Glass & Mirror Company were one and the same firm, and the services were treated by Mr. Parker as performed for whichever firm as appeared

at the time to be most advantageous. What was actually in dispute was whether Potts' compensation was to be 7% of the gross wholesale sales effected by him outside Dallas County, with the option in Potts to take 25% of the profit (difference between purchase price and sale price) on "low markup" carload lot sales. It was undisputed that Potts did elect to take such a 25% as applied to a single account to which "low markup" carload lot sales were made. Further, it was actually in dispute as to whether the period over which he was entitled to such compensation, by way of commissions, extended from January 1, 1957, to October 31, 1957, although no point of error is predicated upon the establishment thereof by the verdict of the jury.

Potts placed his cause of action in suit by means of intervention in a suit earlier filed by Mr. Thomas against the same defendants. A major part of Thomas' cause of action was different from that of Potts, but it seems that in the event Thomas showed himself entitled to recover on his cause of action the audit of the books of the two named defendants would show not only the proper amount for which Thomas' judgment should be entered, but likewise the proper amount for which Potts' judgment should be entered, if he, Potts, showed himself entitled to a judgment. Furthermore, it is to be noticed that Mr. Crayton placed his, Crayton's, cause of action in suit by means of an intervention filed in the same suit. It appears that in the event Crayton showed himself entitled to recover on his cause of action, the audit of the books of the two named defendants would show not only the proper amount for which his judgment should be entered, but all, or substantially all, the information necessary to be ascertained to calculate the proper amount for which Potts' judgment should be entered, in the event he showed himself entitled to any judgment.

The causes of action of the several parties, Potts, Crayton, and Thomas, were all tried in a single action as by one suit at law. The defendants protested, moving to strike the petitions as by intervention and, failing therein, moving for severance of the three causes of action in order that separate trials might be had. The motions were overruled. Such actions on the part of the trial court were made the subject of several points of error presented to us.

These points of error are overruled. The controlling law is embodied in Texas Rules of Civil Procedure, rule 40, "Permissive Joinder of Parties", 41, "Misjoinder and Non-Joinder of Parties", and 174, "Consolidation; Separate Trials". Under these Rules, and especially T.R.C.P. 174, the trial court is vested with great discretion in questions of joinder of parties and causes of action, and of consolidation or separation of causes of action, in the absence of an abuse of which, to the prejudice of a complainant, such action of the court will not be disturbed on appeal. In their argument on appeal, those who were defendants below presume that prejudice resulted to them as the result of the action of the trial court but do not demonstrate that they were in fact prejudiced. For that reason alone their contentions must be overruled. However, it appears to us to have constituted an act of wisdom on the part of the trial court, under the circumstances of the cases before it, to leave them consolidated. By so doing it appears to us that justice was promoted in that thereby was eliminated the necessity for three separate trials in which tedious and time-consuming examination into the same figures would be necessary on each. See McDonald, Texas Civil Practice, p. 910, et seq., "Pretrial Procedures", sec. 10.24, "(Consolidation, Severance, Separate Trial)—B. Consolidation".

Two of the points of error advanced are predicated upon the contention that there was "no evidence" sufficient to warrant the submission of Special Issues 22 and 23. These issues read as follows:

Special Issue No. 22: "Do you find from a preponderance of the evidence that Intervenor Potts' agreed commission was 7% of

gross territory wholesales, Potts to have the option to sell low markup truckload and carload lots on the basis of 25% of the gross profits on such sales?"

Special Issue No. 25: "Do you find from a preponderance of the evidence that the only wholesale territory account that Intervenor Potts elected to sell on the basis of a commission of 25% of the gross profit was the 'Living Window' account of Houston, Texas?"

The jury answered in the affirmative, or "Yes", to both issues. It is actually undisputed in the evidence that in the event Potts obtained an affirmative answer to Special Issue No. 22 the only occasion when he exercised his option was as applied to the "Living Window" account, and therefore we are of the opinion that an answer to Special Issue No. 25 was unnecessary and superfluous, though no doubt convenient for the court and jury in computing the amount of Potts' recovery.

■ The complaint leveled at the issues is based upon the testimony of witnesses concerning the matter of the option of Potts to sell low markup sizeable lots on the basis of 25% of the *gross profits*. The complaint is that the testimony was as to "net" profits and the special issue was worded as to "gross" profits. Our examination of the record leads us to the conclusion that the jury was not confused. The witnesses used the terms "gross", "net", and "markup" interchangeably during the trial and it is clear that in all instances what was meant, as applied to profits, was the difference between the cost of the material and the price for which it was sold. The state of the testimony is such that we must necessarily conclude that the jury would have answered the issue in the same way even had the term used been as complainants claim it should have been. There was no prejudice.

Potts' judgment was in the amount of $8,684.68. This was calculated by the court from the jury finding that $11,784.68 was the total amount of commissions to which Potts became entitled under the contract, and from the undisputed evidence that he had been paid $3,100. Complainants contend that there was no evidence and an insufficiency of evidence to support the jury's finding that Potts' compensation under the contract was $11,784.68, and further contend that the judgment for $8,684.-68 was not supported by the pleadings, the evidence, or the jury findings.

Basically the contention is that though there was a jury finding that the Service Glass Company of Dallas, Inc., and the Parker Glass & Mirror Company were operated as one enterprise through September 1, 1957, Potts' claim and award were premised upon the theory that his service extended to and inclusive of the date of October 31, 1957. The judgment rendered was joint and several against both Service Glass and Parker. It is contended that no proper judgment could have been rendered against either Service Glass or Parker, and the error in attempting to do so was compounded when it was made a joint and several judgment.

■ In the court below the trial was conducted, without objection, on the theory that the defendants' liability, if any, was joint and several. Further, upon one occasion Potts' counsel started to enter into an inquiry as to what sales were credited to the books of Service Glass and what were credited to Parker, and opposing counsel stated before the court that such would be immaterial in that by Potts' testimony the contract had been shown to have been made with both companies. Thereupon, Potts' counsel agreed and thereafter desisted from offering proof which would have segregated the sales and commissions. Furthermore, the evidence establishes that Mr. Parker was the sole owner of Parker Glass and owned all the stock of Service Glass. There is no insufficiency in the evidence for such reason, and the jury's answer to the special issue which established that the two firms were operated as

one to September 1, 1957, (which actually applied to the suit of Thomas) is not necessary to be taken into account in an examination of the propriety of Potts' judgment. Further examination of the evidence, in a test thereof in view of other complaints, reveals that there was no insufficiency therein to support the verdict and judgment for Potts.

Special Issue No. 30 reads as follows: "Do you find from a preponderance of the evidence that Intervenor Jim Potts and James D. Crayton, acting in the capacity of General Sales Manager of Defendants, on or about March 15, 1957, *did not* in fact agree upon all of the terms of the contract for the employment of Jim Potts? Answer Yes or No. Answer: Yes (did not agree)". Based upon the answer to such issue, it is contended that thereby was established that there was no contract and no meeting of the minds requisite to establish one.

It is to be noted that by the answer to Special Issue No. 22 the jury found the percentage of the commission due Potts as an "agreed commission", and what agreed percentage option he was to receive on bulk lots. Other answers established the amount to which he was entitled. We believe the most that complainants could say would be that the jury's answer to Special Issue No. 30 conflicted with its answers to other issues, especially Special Issue No. 22. The test thereof is, whether taking the finding alone in the one instance, a judgment should be entered for the plaintiff; and taking it alone in the other, judgment should be entered in favor of the defendant. Little Rock Furniture Mfg. Co. v. Dunn, 1949, 148 Tex. 197, 222 S.W.2d 985. Application of the test to the instant situation readily resolves any question in favor of the judgment obtained by Potts, particularly when it is noticed that Pott's employment and the terms thereof had in large degree already been agreed upon prior to March 15, 1957. Whether or not there was some term of the contract in question to which the parties never agreed, nevertheless it was established in the answers to the other issues, especially Special Issue No. 22, that the parties did in fact agree upon the elements by which Potts' compensation was to be computed and the services for the performance of which he would be entitled to such compensation.

A final point of error presents the contention that the trial court erred in refusing to hold that the jury committed misconduct vitiating its verdict in that it concerned itself with the effect of its answers to the issues and attempted to render answers in order to accomplish a recovery by Potts. Examination of the statement of facts made upon the hearing of the motion for new trial reveals that there was an issue of fact made upon the matter of the character of misconduct asserted which the trial court resolved against the contention of the complainants. We hold the decision of the trial court is final. The point of error is overruled.

Judgment is affirmed.