Joann BROWN, Appellant,

v.

Thomas J. TUCKER, et al., Appellees.

No. 01–82–0250–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 14, 1983.

Rehearing Denied May 26, 1983.

Phillip A. Pfeifer, Young, Cook, Pfeifer & Hampton, Houston, for appellant.

Michael Hendryx, Weitinger, Steelhammer & Tucker, Stephen Carrigan, Fulbright & Jaworski, Houston, David Kultgen, Waco, for appellees.

Before EVANS, C.J., and WARREN and DOYLE, JJ.

## OPINION

EVANS, Chief Justice.

This is a personal injury action.

The plaintiff, Steven Craig Stubbs, sixteen years of age, was injured when he was thrown from the bed of a pick-up truck being driven by Allen Dale Tucker, deceased.

This suit to recover damages for Stubbs' injuries was brought by his mother, Joann Brown, individually and as next friend, and by his stepfather, Glenn A. Brown. The suit named as defendants the driver's father, Thomas J. Tucker, individually and as legal representative of his deceased son's estate, the Aetna Casualty and Insurance Company, two Aetna insurance agents, and the Farmers Texas County Mutual Insurance Company.

Prior to trial, the plaintiffs settled with Tucker, and upon tender of the limits under his third-party liability insurance coverage (apparently the $10,000 minimum) Tucker was non-suited from the case. The plaintiffs then proceeded to trial against Aetna, its two agents, and Farmers Texas County Mutual Insurance Company. Prior to trial, all parties stipulated that the plaintiff's actual damages were equal to the sum of $100,000 and that such damages had been proximately caused by the accident.

The plaintiffs did not request special issues regarding acts or omissions by one Aetna agent, R.G. Clarke, nor Farmers Texas County Mutual Insurance Company. Also, neither of these two defendants have filed briefs with this court. Therefore, the only parties appealing from the judgment below are defendants, Aetna and its agent, Harrie Swinford.

The principal issue in this case grew out of allegations by the plaintiffs that Aetna and its agents made certain misrepresentations in connection with the sale of uninsured/under-insured motorist coverage to Glenn Brown. The Aetna policy purchased by Brown provides for $100,000/$300,000 bodily injury liability limits, but only minimum uninsured/under-insured coverage of

$10,000/$20,000. The plaintiffs' contention, both at trial and on appeal, is that Aetna, having failed to obtain Brown's rejection of under-insured motorist's coverage, should be required, as a matter of law, to provide such coverage in an amount equal to his bodily injury liability limits. The plaintiffs also contend that Aetna's failure to advise Brown of the availability of higher limits on his under-insured motorist coverage constituted a misrepresentation, violating the provisions of the Texas Insurance Code and Texas Deceptive Trade Practices Act. Pursuant to both theories, the plaintiffs are asking this court to imply, as a matter of law, that they are entitled to now recover the maximum available limits on their under-insured motorist coverage.

The case was submitted to the jury on twenty-one special issues which inquired into acts and omissions of Aetna and Swinford and the resulting effects on plaintiffs, including a finding that the driver of the truck was negligent. The jury found that Aetna's agent Swinford, failed to offer maximum limits on under-insured motorist coverage to plaintiff's stepfather, and that such failure was a misrepresentation and producing cause of plaintiff's damages.

The jury also made findings regarding Aetna's attempt to inform plaintiffs of their right to purchase maximum under-insured motorist coverage through its brochure entitled "Some Important Information About Your Insurance Policy." Use of this brochure was found to be misleading and unconscionable; however, its use was not found to be a producing cause of plaintiff's damages.

Finally, the jury found that while the insured had not known of the availability of higher limits on his under-insured liability coverage, that if he had known, he would have not purchased coverage in excess of the minimum limits.

The trial court entered judgment on the jury's verdict, denying plaintiff's claims against Aetna, and its agent, Harrie Swinford.

On this appeal the plaintiffs contend that the trial court: (1) erred in its definition of the term "household" in its supplemental charge to the jury; (2) erred in submitting special issues inquiring how much under-insured coverage the insured would have bought had the availability of higher limits of such coverage been known to him; (3) erred in refusing to hold, as a matter of law, that Aetna's failure to obtain Brown's rejection of under-insured motorist's coverage required it to provide such coverage in an amount equal to the insured's bodily injury liability limits; and (4) erred in its alignment of the parties and in its allocation of jury strikes between the plaintiffs and defendants.

We have concluded that our determination of the first point of or error is dispositive of the principle issue in the case and that it is, therefore, unnecessary for us to consider the plaintiff's second and third points of error.

In order for the injured plaintiff, Stubbs, to recover under his stepfather's Aetna insurance policy, he was required to prove that he was a "relative", as that term is used in the Aetna policy. The policy defines the term "relative" as a relative of the named insured or of the spouse of the named insured, who was a "resident of the same household." Since Stubbs was the son of the insured's wife, the sole issue to be determined was whether, at the time of the accident, Stubbs was a "resident of the same household" as that of his mother and stepfather. Stubbs's residence was a vigorously contested issue at trial.

At the time of the accident, Stubbs had been living with his brother in a trailer on property owned by his grandmother about five miles away from the home of his mother and stepfather. He had moved to the trailer from his mother's home several months earlier because he "wanted to be on his own" and because his mother and stepfather were planning a move to another home. Stubbs's mother testified that she had agreed to let her son live with his brother on a "temporary" basis, but that she "intended" for him to return home and go back to school after they had moved into their new house. She said her son was at

home about "half the time" and that he would come there to visit, eat, or have her do his laundry. She gave him advice and financial help. He kept some clothes and a stereo at her home. At the time of the accident, Stubbs was employed full-time by a fabricating and welding company, and his payroll record and income tax return showed that he listed his address as being that of the trailer. He was also paying for his own car and insurance, and he kept his day-to-day clothes at the trailer.

In order to resolve this issue the trial court submitted the following question and instruction to the jury:

Do you find from a preponderance of the evidence that Steven Craig Stubbs was a resident of the same household as Glenn and Joann Brown on April 15, 1978? You are instructed that an individual may have one or more residences.

Answer: We do not.

After the jury had deliberated for over a day, they asked the court to define the term "household" as used in the above special issue. The defendants requested a definition of "household" as set forth in *Travelers Indemnity Co. v. American Indemnity Co.,* 315 S.W.2d 677 (Tex.Civ.App.—Fort Worth 1958, no writ), wherein the court discussed, among other definitions of the term, one contained in Webster's New International Dictionary. The trial court submitted the following definition:

Those who dwell under the same roof and compose a family.

The plaintiff duly objected to this definition before its submission to the jury and dictated into the record a requested version, asking in lieu thereof, the following:

Household means a family or group of persons who habitually reside under one roof and form one domestic circle.

The court, however, submitted the definition as used in *Travelers,* and the plaintiffs contend this constituted reversible error. The plaintiffs now argue that the *Travelers'* definition places too much emphasis on the "geographical location" of the injured plaintiff's residence and also constitutes an improper comment on the weight of the evidence. They contend that their version was more appropriate because it "takes into account that persons may be temporarily absent from the physical premises of the rest of the household without losing their identity with that household."

The plaintiffs do not contend that they were prevented by the court's charge from making their argument to the jury about permissible temporary absence from the physical premises of the household. Although the definition requested by the plaintiffs might have emphasized their argument in that respect, the two definitions are so nearly the same that it is doubtful the jury could have been misled. Indeed, the court's charge allowed the jury to find that the plaintiff was a resident of the same household as his mother and stepfather, even though he maintained another residence. Furthermore, since the term "habitually", contained in the plaintiff's version, may have several connotations dependent upon usage, the trial court might have decided that the *Travelers'* definition would probably cause less confusion to the jury. Whatever the trial court's motivation, the general rule regarding definitions has been stated as follows:

The sufficiency of the explanations and definitions as to form is largely within the discretion of the trial court, the test being reasonable clearness of the definitions to enable jurors to understand the words and phrases. *Gulf Ins. Co. v. Vela,* 361 S.W.2d 904 (Tex.Civ.App.—Austin 1962, ref'd, n.r.e.) In this regard the trial court has considerably more discretion in submitting explanatory instructions than it has in submitting special issues. *First State Bank & Trust Co. of Edinburg v. George,* 519 S.W.2d 198 (Tex.Civ.App.—Corpus Christi 1975 ref'd n.r.e.)

*Houston National Bank v. Biber,* 613 S.W.2d 771 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.).

■ We hold that the record does not demonstrate that the trial court abused its discretion in defining the term "household" in its supplemental charge and that its

**496**

charge does not constitute an improper comment on the weight of the evidence. *See,* Tex.R.Civ.P. 277; *Norman v. First National Bank & Trust, Bryan,* 557 S.W.2d 797 (Tex.Civ.App.—Houston [1st Dist.] 1977, ref'd n.r.e.).

The plaintiffs first point of error is overruled.

 Because the jury found Stubbs was not a resident of the Brown household, he was not insured under the Aetna policy and, therefore, we need not consider points of error two and three.

It is necessary to consider the plaintiffs' fourth point of error in which they contend that the trial court erred in its alignment of the parties and in allocating the number of peremptory challenges between the plaintiffs and the defendants.

The record shows that the plaintiffs were given nine jury strikes and the defendants a total of eleven. Of the number given to the defendants, Aetna and Farmers were together given six strikes and Aetna's two agents were given the other five.

The plaintiffs contend that certain comments made during the voir dire examination show that no antagonism existed between Aetna and its two agents. The plaintiffs argue that even though Aetna filed a cross-action against its two agents for indemnity and/or contribution, its pleadings contained no issues of fact upon which they differed with the agents, and, therefore, there was no basis for any division of the peremptory strikes between Aetna and its agents.

Contrary to the plaintiff's contentions, the trial court did submit fact issues to the jury that were based upon the allegations of Aetna's cross-action. In its charge to the jury, the trial court submitted issues inquiring whether Aetna's agent had made a misrepresentation to the insured regarding under-insured motorist coverage and whether Aetna's brochure was such that a reasonably prudent person would have been advised of the right to purchase increased under-insured coverage.

We hold that the trial court did not err in determining that antagonism existed between Aetna and its two agents and in so aligning the parties, and in allocating peremptory challenges on the basis of such alignment. Tex.R.Civ.Stat.Ann. art. 2151a (Vernon Supp.1982); *Patterson Dental Co. v. Dunn,* 592 S.W.2d 914 (Tex.1979).

The plaintiff's fourth ground of error is overruled.

The judgment of the trial court is affirmed.