**LONE STAR FORD, INC., Appellant,**

v.

**George E. McCORMICK, Jr. and James Drury, Appellees.**

**No. 01–91–00861–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 26, 1992.

Rehearing Denied Oct. 1, 1992.

Dale M. Tingleaf, Johnson, Wurzer & Tingleaf, P.C., Houston, for appellant.

Vern J. Thrower & Assoc., P.C., Vern J. Thrower, Greg W. Thrower, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and DUNN and WILSON, JJ.

## OPINION

DUNN, Justice.

This appeal involves two lawsuits that were consolidated by the trial court, *Drury v. Lone Star Ford, Inc.*, No. 90–008209 and *McCormick v. Lone Star Ford, Inc.*, No. 90–008208. Each lawsuit involved an alleged tortious interference with and breach of an agreement by appellant, Lone Star Ford, Inc. (Lone Star). McCormick and Drury also named Bruton Smith and Sonic Financial Corporation (Sonic) as defendants. Smith was the president and a principal shareholder of Sonic. Sonic owned all appellant's corporate stock at the time appellant terminated Drury's and McCormick's agreements.

McCormick's agreement with appellant provided for his employment as Lone Star's general manager, and Drury's agreement with appellant provided for his employment as Lone Star's advertising spokesperson.

Trial was to a jury, which found in favor of appellees, as follows:

(1) Lone Star failed to comply with the agreement between it and each of the appellees;

(2) Smith knowingly interfered with the agreements between Lone Star and each of the appellees;

(3) Lone Star's failure to comply with the agreement between it and McCormick was not excused, and no good cause existed for Drury's discharge.

The jury awarded compensatory damages of $31,000 to McCormick and $40,000 to Drury and attorney's fees of $29,000 to McCormick and $24,000 to Drury. The jury also awarded punitive damages of $50,000 to McCormick and $25,000 to Drury, each against Smith. The trial court granted appellant's motion for judgment notwithstanding the verdict as to Smith, but entered judgment in favor of appellees on the jury's findings of breach of contract and attorney's fees.

### Basis of the Appeal

In seven points of error, Lone Star complains that the trial court erred in granting appellees' motion for consolidation; in denying Lone Star's motion for judgment notwithstanding the verdict and in rendering judgment for McCormick, because Lone Star was justified in terminating McCormick's employment and was excused from continuing to employ McCormick; in denying Lone Star's motion for new trial and in entering a judgment for McCormick because the jury's finding that Lone Star's failure to comply with the agreement was not excused was against the great weight and preponderance of the evidence; in refusing to submit to the jury Lone Star's tendered instruction with regard to mitigation of damages; in denying Lone Star's motion for judgment notwithstanding the verdict and in rendering judgment for Drury, because there was no evidence to support the jury's award; and in denying Lone Star's motion for new trial, because the evidence was insufficient to support the amount found by the jury as Drury's actual damages.

### Consolidation of McCormick's and Drury's Causes of Action

In its first two points of error, appellant complains that the trial court committed reversible error in consolidating McCormick's and Drury's causes of action. Appellant contends that the suits did not involve a common question of law or fact and that, as a result, Lone Star was prejudiced and denied a fair trial.

A trial court has broad discretion to consolidate cases pursuant to Texas Rules of Civil Procedure 41 and 174, and its action will not be disturbed on appeal, except for abuse of discretion. *Ruthart v. First State Bank*, 431 S.W.2d 366, 367–68 (Tex.Civ.App.—Amarillo 1968, writ ref'd). Under rule 174, a trial court has "authority to order a joint trial when actions involving a common question of law or fact are pending before the Court." Tex.R.Civ.P. 174(a). The actions should relate to substantially the same transaction, occurrence, subject matter, or question. They should be so related that evidence presented will be material, relevant, and admissible in each case. *See Alice Nat'l Bank v. Corpus Christi Bank & Trust*, 431 S.W.2d 611, 624 (Tex.Civ.App.—Corpus Christi 1968), *aff'd*, 444 S.W.2d 632 (Tex.1969).

■ Abuse of discretion may be found if consolidation results in prejudice to the complaining party. The prejudice, however, may not be presumed, but must be demonstrated. *Parker v. Potts*, 342 S.W.2d 634, 636 (Tex.Civ.App.—Fort Worth 1961, writ ref'd n.r.e.). The complaining party must show that it exercised reasonable diligence to avoid or prevent the harm by opposing the order for consolidation. *Scott v. Farmers' & Merchants' Nat'l Bank*, 66 S.W. 485, 491, rehearing overruled by 67 S.W. 343 (Tex.Civ.App.—Austin 1902), *rev'd on other grounds*, 97 Tex. 31, 75 S.W. 7 (Tex.1903).

This Court must, therefore, examine McCormick's and Drury's causes of action to ascertain whether they have common questions of law and fact; whether the actions relate to the same or substantially the same transaction, occurrence, subject matter, or question; whether the evidence presented at trial was material, relevant, and admissible in each case; and whether appellant opposed the motion for consolidation.

■ Appellees urge us to consider that the events surrounding the termination, cancellation, and interference with the employment contracts between McCormick and Lone Star and between Drury and Lone Star are "inextricably intertwined." They state that defendant Smith, "acting on his own and without any legal or official authority," undertook a series of transactions to terminate management and employees, including McCormick and Drury. Appellees note that McCormick's authority as vice-president and general manager of Lone Star is also common to both lawsuits, as Smith alleged that the contract between Lone Star and Drury was not binding on Lone Star because McCormick had no authority to contractually bind Lone Star to Drury.

We find that there were common questions of law and fact between the two lawsuits. The actual damages determined by the jury on the breach of contract claims were not at variance with amounts allegedly owed the litigants under the contracts. Further, the trial court granted appellant's motion for judgment notwithstanding the verdict on the punitive damages claims against Smith for tortious interference. Appellant failed to demonstrate how it was prejudiced as a result of consolidation.

We overrule points of error one and two.

### McCormick's Damages

In point of error three, appellant contends that the trial court committed reversible error in denying its motion for judgment notwithstanding the verdict and in rendering judgment for McCormick because, as a matter of law, Lone Star was justified in terminating McCormick's employment or was, as a matter of law, excused from continuing to employ McCormick as its general manager. In point of error four, appellant maintains that the trial court committed reversible error in denying its motion for new trial and in entering judgment for McCormick based on the jury's failure to find that Lone Star's failure to comply with the agreement was not excused because the jury's answer is against the great weight and preponderance of the evidence.

■ In order for a trial court to disregard a jury's findings and to grant a motion for judgment notwithstanding the verdict, it must determine that there is no evidence upon which the jury could have relied for its findings. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987); *Navarette v. Temple Indep. School Dist.*, 706 S.W.2d 308, 309 (Tex.1986). A trial court has wide discretion in denying a motion for new trial, and its action will not be disturbed on appeal absent a showing of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Balias v. Balias, Inc.*, 748 S.W.2d 253, 257 (Tex. App.—Houston [14th Dist.] 1988, writ denied).

Lone Star argues that McCormick began work in November of 1988 and that, by the end of the year, Lone Star's books showed an operating loss of $964,050. Lone Star contends that the general manager of an automobile dealership is "akin to the captain of a ship. The whole dealership operation is his responsibility and it is his job to see that it is profitable." By December of

1989, the total losses that the dealership incurred during the year it was managed by McCormick were $2,161,286. Smith testified that he took steps to work with McCormick and train him to "try to get the dealership back on course," but to no avail. McCormick's employment was terminated on December 28, 1989. Lone Star's position is that it was excused in discharging McCormick, based on McCormick's "uncontested failure to run the dealership and make it profitable."

■ John Noble, corporate liaison between Lone Star and its parent company during the time in question, testified that McCormick made tremendous strides in certain areas of the dealership and re-established relationships with Ford Motor Credit and Ford Motor Company that had deteriorated over the years. Noble also testified that other factors were present at the time McCormick was general manager that were not in McCormick's control, including the fact that the dealership was short on money and under siege from lenders, that 1989 was a bad year in the automobile market, and that Lone Star's president, Chuck West, died that year. Noble stated that the dealership was not properly capitalized when McCormick first became general manager and that, given the right set of circumstances, McCormick would have been a capable manager.

McCormick testified about circumstances beyond his control that confronted the dealership in 1989 and caused the financial losses of the company.

The following question and instructions were submitted to the jury:

*Question Number Three*

Was Lone Star Ford, Inc.'s failure to comply with the Agreement between Lone Star Ford, Inc. and George McCormick excused?

*Instructions:*

Failure to comply by Lone Star Ford, Inc. is excused by George McCormick's previous failure to comply with a material obligation of the same Agreement.

Lone Star Ford, Inc.'s failure to comply is excused if you find that good cause existed for George McCormick's discharge.

Good cause for discharge as used in this charge means a failure of the employee to perform those duties in the scope of his employment as a man of ordinary prudence in an industry would have done under the same or similar circumstances. Answer "yes" or "no."

The jury answered "no" to question number three.

We hold the trial court did not commit error in denying the motion for judgment notwithstanding the verdict and did not abuse its discretion in refusing to grant the motion for new trial, in light of the jury's negative answer regarding justification to terminate McCormick's contract.

We overrule points of error three and four.

### Drury's Damages

■ In point of error five, Lone Star asserts that the trial court committed reversible error in refusing to submit to the jury its tendered instructions with regard to mitigation of damages. Texas Rule of Civil Procedure 277 states "the court shall submit such instructions and definitions as shall be proper to enable the jury to render a verdict." In implementing the rule, trial courts have wide discretion. *See Mobil Chemical Co. v. Bell*, 517 S.W.2d 245, 256 (Tex.1974). A trial court has considerably more discretion in submitting instructions and definitions than it has in submitting questions. *Brown v. Tucker*, 652 S.W.2d 492, 495 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). The standard of review for a trial court's instruction to the jury is that an error on instructing or failing to instruct must have caused, or can be reasonably calculated to have caused, the rendition of an improper verdict. *Steinberger v. Archer County*, 621 S.W.2d 838, 841 (Tex.App.—Fort Worth 1981, no writ); Tex.R.App.P. 81(b)(1).

Evidence adduced at trial shows that Drury's contract with Lone Star was terminated in January 1990. The contract provided for payments of $3,250 in January of 1990; $4,000 for each of the months of February, March, and April; and $3,000 per month for each of the months of May,

June, and July. The total amount was $24,250. Drury's contract also called for $15,800 worth of work to be done on his car. The jury awarded Drury $40,000.

Drury testified that he obtained other employment in January before Lone Star terminated the agreement. He also secured a job in April of 1990 and made a total of $38,583.30 from these other employment sources after he was discharged by Lone Star. Based on this evidence, Lone Star claims that it offered evidence of mitigation; therefore, the jury should have been instructed accordingly. Lone Star's tendered instruction was: "Do not include in your answer any amount that you find the Plaintiff avoided or could have avoided by the exercise of reasonable care." The trial court refused Lone Star's instruction.

The contract between Lone Star and Drury was a nonexclusive, personal services contract that required only a limited amount of Drury's time to appear and be filmed or recorded in commercials to be broadcast over radio and television and to make personal appearances. One of the terms of the contract was that personal appearances by Drury were subject to his availability. The contract did not require Drury to limit the use of his image exclusively to Lone Star or to devote his time during normal business hours on a daily, weekly, or monthly basis to the performance of the contract. During the term of the agreement, Drury could enter into as many agreements as he was capable of performing, as long as he complied with the terms of his agreement with Lone Star.

■■■ If the evidence establishes that a party has a duty to mitigate damages, then an instruction to that effect is in order. *See Fidelity & Deposit Co. v. Stool,* 607 S.W.2d 17, 25 (Tex.Civ.App.—Tyler 1980, no writ). The mere fact that an injured party is able to make arrangements for disposition of the services that he was to supply under a contract does not necessarily mean that, in doing so, he will avoid loss. If the aggrieved party would have entered into both transactions but for the breach, he has "lost volume" as a result of the breach. RESTATEMENT (SECOND) OF CONTRACTS § 350, cmt. d (1981).

In the case of *Ullman–Briggs, Inc. v. Salton, Inc.,* 754 F.Supp. 1003, 1008–1009 (S.D.N.Y.1991), the court reasoned that a party claiming to be a lost volume seller must establish that it would have had the benefit of both the original contract and subsequent contracts had there not been a breach. *Id.* In *Ullman,* the court formulated a test that utilized both a subjective and an objective component. *Id.* at 1008. The subjective component requires the injured party to demonstrate that he possessed the intent to take on additional contracts. *Id.* at 1009. The objective component requires the injured party to establish that he had the capacity to enter into new contracts without incurring additional expenditures. *Id.* at 1009.

■■■ If this test were applied to Drury, he would be a "lost volume" seller of his personal services. Drury was engaged in similar contractual work at the time he executed the agreement with Lone Star, and he entered into an additional contract during the term of the agreement and before the breach by Lone Star. Thus, he demonstrated both the intent to undertake additional contractual work and capacity to enter into new contracts without incurring additional expenditures.

If the relation between the parties is such that the nonbreaching party was legally free to enter into similar contracts with other, the fact that subsequent to the breach the wronged party could have made similar contracts does not reduce the damages to which he is entitled. *See Graphic Assoc., Inc. v. Riviana Restaurant Corp.,* 461 So.2d 1011, 1014 (Fla.App.1984). In Drury's case, the nonexclusive nature of the agreement with Lone Star prevents Lone Star from asserting that Drury had a duty to find replacement work upon Lone Star's breach in order to mitigate damages. *See Fidelity,* 607 S.W.2d at 25.

■■■ When the trial court refuses to submit a requested instruction, the appellate court must determine whether the request was reasonably necessary to enable the jury to render a proper verdict. *Johnson v. Whitehurst,* 652 S.W.2d 441, 447 (Tex.App.—Houston [1st Dist.] 1983, writ

ref'd n.r.e.). When the refusal is based on a determination that the request is unnecessary, the abuse of discretion standard should apply. *See, e.g., Texas Employers' Ins. Ass'n v. Charles*, 381 S.W.2d 664, 668 (Tex.Civ.App.—Texarkana 1964, writ refused n.r.e.). In the present case, Lone Star's request was unnecessary. If the court determined that Drury had no duty to mitigate, the instruction was properly refused. We hold that the trial court did not abuse its discretion.

We overrule point of error five.

In point of error six, appellant argues that the trial court committed reversible error in denying its motion for judgment notwithstanding the verdict and rendering judgment for Drury based on the jury's finding as to Drury's actual damages, because there is no evidence to support the jury's award. In point of error seven, appellant contends that the trial court committed reversible error in denying its motion for new trial because the evidence was insufficient to support the amount found by the jury as Drury's actual damages.

Lone Star's argument under points of error six and seven relate only to its assertion that if the jury had been properly instructed about mitigation of damages, they would have rendered a different verdict. In light of our discussion of the evidence of Drury's damages that was presented at trial and our disposition of point of error five, we find the evidence was sufficient to support the trial court's overruling the judgment notwithstanding the verdict and that the trial court did not abuse its discretion in denying the motion for new trial.

We overrule points of error six and seven.

### Cross–Points on Appeal

In their first cross-point, appellees contend that the trial court committed reversible error by granting appellant's motion for judgment notwithstanding the verdict in part and entering judgment in favor of Smith, notwithstanding jury findings that Smith knowingly interfered with the agreement between Lone Star and McCormick and that assessed $50,000 in punitive dam-

ages in favor of McCormick against Smith. In their second cross-point, appellees contend that the trial court committed reversible error by granting appellant's motion for judgment notwithstanding the verdict in part and entering judgment in favor of Smith notwithstanding the jury findings that Smith knowingly interfered with the agreement between Lone Star and Drury and that assessed $25,000 in punitive damages in favor of Drury against Smith. Appellant filed a motion to quash appellees' cross-points and to dismiss the portion of the appeal predicated upon the cross-points, asserting that the cross-points are not directed to the judgment against Lone Star, but against the trial court's judgment in favor of one of the defendants in the trial court, Bruton Smith. Appellant argues that appellees have placed themselves in the role of appellants, without perfecting their own appeal against Smith. Appellant urges this Court to hold that we are without jurisdiction to consider appellees' cross-points against Smith.

The final judgment in this case was signed on June 4, 1991. On June 19, 1991, Drury and McCormick filed a notice of limitation of appeal under Texas Rules of Appellate Procedure 40(a)(4), stating they desired to appeal with respect to only those portions of the judgment that denied them relief against Bruton Smith and dismissed their claims against Sonic.

Though Drury and McCormick filed no cost bond, Lone Star timely filed its cost bond. Lone Star's cost bond lists "Lone Star Ford, Inc." as appellant and "George E. McCormick, Jr., etal [sic]" as appellees. After Lone Star filed its brief, Drury and McCormick filed their own brief, which included the two cross-points of error of which Lone Star now complains.

An appellee may use cross-points to complain of some ruling or action of the trial court that the appellee asserts constituted error as to it. *Hernandez v. City of Fort Worth*, 617 S.W.2d 923, 924 (Tex.1981). The perfection of two separate and distinct appeals is not necessary, unless "the judgment of the trial court is definitely severable, and appellant strictly

limits the scope of his appeal to a severable portion." *Id.* However, the appellee's use of cross-points is subject to the limitation that "such cross points must affect the interest of the *appellant* or bear upon matters presented in the appeal." *Young v. Kilroy Oil Co.,* 673 S.W.2d 236, 241 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (emphasis in original).

Our reading of Drury's and McCormick's cross-points indicates that they seek to determine issues arising between them and Smith, who is not before this Court as either an appellant or an appellee. Drury and McCormick reason that because Lone Star filed no notice of limitation of appeal, Lone Star appealed the entire judgment, including the portion denying relief to them on their respective claims against Bruton Smith.

■ Drury and McCormick mistake the effect of Lone Star's election not to file a notice of limitation of appeal. When the appellant does not limit his appeal pursuant to rule 40(a)(4), an appellee "may complain by cross point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court as between appellant and appellee." *Donwerth v. Preston II Chrysler–Dodge,* 775 S.W.2d 634, 639 (Tex.1989). To be raised by cross-point, a matter must affect only the interests of the appellees and the appellants and may not reach the interests of another party below who has not been made an appellee.

Absence of a notice of limitation of appeal from Lone Star puts at issue the whole case as between itself and Drury and McCormick. It does not put at issue the case between Lone Star and every other entity that was a party to the case in the trial court.

■ The identity of the parties to the appeal is determined by reference to the cost bond. An entity whose interests are adjudicated in a judgment is properly an appellant with respect to that judgment (or some severable portion thereof, if it timely files proper notice of limitation of appeal) only if it timely files a proper cost bond or proper substitute with the clerk of the trial court. *See, e.g., Mann v. Franklin Federal Bancorp,* 796 S.W.2d 318, 319 (Tex.App.—Austin 1990, no writ). An entity whose interests are adjudicated in a judgment is properly an appellee with respect to that judgment only if it is named in a proper cost bond or proper substitute timely filed with the clerk of the trial court. Tex.R.App.P. 46(a). The cost bond is jurisdictional. *Gonzalez v. Doctors Hosp.,* 814 S.W.2d 536 (Tex.App.—Houston [1st Dist.] 1991, no writ). Neither Smith nor Sonic is an appellant or an appellee in this proceeding.

We grant Lone Star's motion to quash appellees' cross-points and dismiss the appeal on those cross-points.

Even if we were to consider McCormick's and Drury's cross-points, which assert that the trial court committed reversible error by granting Lone Star's motion for judgment notwithstanding the verdict in part and entering judgment in favor of defendant Smith notwithstanding the jury findings that Smith knowingly interfered with the agreement between Lone Star and appellees and that assessed punitive damages in favor of appellees against Smith, we would find they are without merit.

■ An appellate court reviews the record in the light most favorable to the finding, considering only the evidence and inferences that support the finding and rejecting the evidence and inferences contrary to the finding. *Navarette,* 706 S.W.2d at 309; *Williams v. Bennett,* 610 S.W.2d 144, 145 (Tex.1980). If there is more than a scintilla of competent evidence to support the jury's finding, then the judgment n.o.v. will be reversed. *Navarette,* 706 S.W.2d at 309.

The jury made the following findings, in regard to punitive damages that should be assessed against Smith:

Jury Finding Number Two: Bruton Smith knowingly interfered with the agreement between Lone Star Ford, Inc. and George McCormick.

Jury Finding Number Eight: $50,000 should be assessed against Bruton Smith as punitive damages in favor of George McCormick.

Jury Finding Number 13: Bruton Smith knowingly interfered with the Agreement between Lone Star Ford, Inc. and James Drury.

Jury Finding Number 17: $25,000 should be assessed against Bruton Smith as punitive damages in favor of James Drury.

In its motion for judgment n.o.v., Lone Star asserted that the court should disregard the above jury findings because (1) as a matter of law, such questions should not have been submitted; (2) there was no evidence to support such findings; and (3) if the law placed the burden on Smith to prove he was privileged to act as he did, then as a matter of law, the jury should have answered the above questions in his favor. McCormick and Drury maintain that Smith had no authority for his actions, in that Smith was not a shareholder of Lone Star, nor was McCormick Lone Star's president in fact.

A party to a business relation cannot tortiously interfere with himself. *Baker v. Welch*, 735 S.W.2d 548, 549 (Tex. App.—Houston [1st Dist.] 1987, writ dism'd). Interference with contractual relations or future business relations is privileged where it results from the exercise of a party's own rights. *Id.* Where the individual and his corporation are so closely aligned that they are one entity, the agent and the principal are treated as one because the agent is the principal's "alter ego"; their financial interest is the same. *Id.*

In *Baker*, this Court indicated that stock ownership is recognized as a financial interest that will trigger a privilege to interfere with a contract of another if it is done in the exercise of the stockholder's own rights or if he has an equal or superior right in the subject matter to that of the plaintiff. *Id.* Evidence adduced at trial showed that Smith owned 90 percent of Sonic, which owned all of the stock of Lone Star. Further, Smith is the chief operating officer of Lone Star and testified that he acted as owner and officer of Lone Star in terminating McCormick's and Drury's contracts.

We affirm the judgment of the trial court.