HARRIS COUNTY, Texas, Appellant

v.

Ronald F. GOING, Appellee.

No. 01–93–00406–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

March 2, 1995.

Rehearing Overruled April 13, 1995.

Mike Driscoll, Barbara Toby Baruch, Houston, for appellant.

Olney G. Wallis, Roy G. Romo, Houston, for appellee.

Ronald F. Going, pro se.

Before OLIVER–PARROTT, C.J., and MARIBAL and O'CONNOR, JJ.

## OPINION

O'CONNOR, Justice.

A jury found that Harris County had demoted and terminated Ronald F. Going's employment in violation of Going's right to exercise free speech under the Texas Constitu-

tion. We reverse and render judgment in favor of Harris County.

## Factual background

In 1982, Harris County hired Going as a patrolman with the precinct two park patrol. The park patrol was headquartered in 310–acre Deussan Park; its officers' primary duty was to patrol Deussan Park and other parks located in the precinct.

The park patrol was under the control of precinct two County Commissioner Jim Fonteno. Captain E.J. "Pappy" Stutts was Going's immediate supervisor. Stutts' supervisor was Captain Floyd Reynolds, precinct two's director of security. On May 26, 1986, Going was promoted to sergeant. Stutts had recommended the promotion. After he was promoted to sergeant, Going supervised several patrolmen, including Gary Jones and Richard Trevino.

In May 1987, Officers Trevino, Gary Jones, and David Jones (no relation to Gary) met with Floyd Reynolds to complain about Going. Gary Jones testified he met with Reynolds to express concerns regarding the safety of officers under Going's command. Trevino testified he told Reynolds that he had loaned $1,500 to Going in January 1986. The purpose of the loan, and whether it was past due, was disputed at trial: Trevino testified Going borrowed the money to pay overdue child support and did not repay it; Going testified the money was to pay for newspaper ads for a fishing lure business.

On August 31, 1987, Reynolds demoted Going to patrolman. Going asked to meet with Commissioner Fonteno to discuss the demotion. Fonteno, Going, Stutts, and Reynolds met on October 21, 1987. Going testified at trial, "I took several documents and computer printouts that I had put together over the basis of the demotion to show [Fonteno] that everything I was being demoted for wasn't true." In a document entitled "Chronological Order of Events From May of 1987," Going stated, among other things, that on June 5, 1987, "Sgt. Going was advised he was going to get demoted and then fired." He also indicated that Floyd Reynolds demoted him for:

1. Last 20 work sheets—even miles

2. Too many miles patrolling park

3. Extra job sheet

4. Loan between employees

Going also included a document entitled "Violations of Our Rules and Regulations Overlooked by 270 [Stutts] and/or 288 [Reynolds]." This document consisted of the following list:

1. 1 officer 3 complaints from females

2. 2 officers took patrol car while on duty and went to party

3. 1 officer came in late 11 times in 60 days

4. 1 officer left early at least 4 times in 60 days and 270 was notified

5. 1 officer tore seat in patrol car with radio holder

6. 1 officer hit tree with patrol car

7. 1 officer had auto pedestrian

8. 1 officer let transmission get over 4 qts. low

9. 1 captain was sideswiped by 18 wheeler

10. 1 officer made a mistake and had to shoot a person

11. 1 officer made a mistake and another person died at the very least indirectly as a result.

Two days after the meeting, Commissioner Fonteno affirmed Going's demotion.

In December 1987, Going injured his knee. On December 28, Stutts sent Going a letter asking him for a physician's statement describing the nature and extent of the injury and specifying when Going could return to work. Going testified he provided the physician's statement within three hours of his receipt of this letter.

On January 13, 1988, Stutts sent a memo to Fonteno in which he said:

On several occasions during 1987, patrolman Ronald F. Going was instructed by myself and Sgt. Gary Jones to qualify with his service pistol as required by our rules (# 30) and Constable Douglas' rules.

Patrolman Going failed to qualify by not taking the required test in 1987 and violat-

ed rules # 4, 17E and 27E of the Park Police rules dated August 17, 1984.

I hereby recommend the aforementioned employee be terminated.

Fonteno returned the memo with the following handwritten note:

1–14–88[:] Pappy[,] You are in charge of security for Pct. 2—Use your own judgment as to what is fair to all parties involved and take whatever action you deem necessary. JF

On January 15, 1988, Stutts told Going he was terminated. Going testified Stutts said he was being discharged because he took too long to submit a physician's statement. However, Stutts testified that, as his January 13 memo indicated, Going was terminated because he did not comply with the rules concerning firearm qualification.

After he was terminated, Going filed a grievance. The county resolution committee concurred with the decision to terminate him.

Going then brought this lawsuit against Harris County, Fonteno, and Stutts. In it he alleged the following causes of action: wrongful discharge, retaliation for whistle blowing, wrongful discharge in retaliation for filing a worker's compensation claim, due process violations involving deprivation of liberty and property interest, violation of freedom of speech, breach of employment contract, intentional and negligent infliction of emotional distress, and conspiracy to wrongfully terminate. At trial, the court directed a verdict in favor of Commissioner Fonteno, and the only questions submitted to the jury were questions regarding Going's free speech claim against Harris County and Stutts, and his intentional infliction of emotional distress claim against Stutts. Jury question number one, and the jury's answers, read as follows:

Do you find that any of the following action was taken by any of the persons listed below in violation of Ronald F. Going's right to exercise free speech under the constitution of the State of Texas and which proximately caused damage to Ronald F. Going?

Action: Demotion from Sergeant to patrolman

Answer "yes" or "no" as to each of the following persons:

a. Harris County, Texas yes
b. E.J. Stutts no

Action: Termination as a Park Patrolman

Answer "yes" or "no" as to each of the following persons:

a. Harris County, Texas yes
b. E.J. Stutts no

To answer "yes" to any of the above Question 1 a–d, you must find that the speech for which Ronald F. Going was terminated addressed a matter of public concern rather than one of personal interest.

In a ten-to-two verdict, the jury found in favor of Stutts on all questions, but, as indicated above, found that Harris County demoted and terminated Going in violation of his right to exercise free speech. The jury awarded damages in the amount of $91,680 and found Going should be reinstated as a Harris County employee, in the position of sergeant. The trial court made reinstatement conditional on Going's satisfaction of physical and legal requirements for the position.

### Governmental Immunity

In point of error 11, Harris County asserts there is no evidence to support a finding of liability for the deprivation of Going's right to free speech. Put another way, Harris County asserts there is no evidence that Going's demotion and termination were the result of a policy attributable to Harris County. Harris County argues that the illegal acts of state officials are not the acts of the government, and that even if an employee or official had deprived Going of his constitutional rights, it was not the act of Harris County.

We note initially that the Texas Supreme Court has recently held that there is no implied right of action for damages arising under the free speech provision of the Texas Constitution. *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 147 (Tex.1995). Suits for equitable remedies for violation of constitutional rights are not prohibited. *Id.* at 149. Going is not, therefore, entitled to money damages. However, he also sought

the equitable remedy of reinstatement. We therefore consider Harris County's immunity argument.

 Harris County correctly notes that a governmental entity is not liable for the torts of its officers or agents, unless the law provides for such liability. *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *Dillard v. Austin ISD*, 806 S.W.2d 589, 592 (Tex.App.—Austin 1991, writ denied); *see, e.g.,* Tex.Civ.Prac. & Rem.Code §§ 101.021, .025(a) (the Texas Tort Claims Act). When a plaintiff sues over the violation of rights resulting from the unlawful acts of public servants, the plaintiff must bring the action against some individual in authority, not against the governmental unit itself. *Dillard,* 806 S.W.2d at 598; *Bagg v. University of Texas Medical Branch,* 726 S.W.2d 582, 585 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). We agree that Harris County cannot be liable for any unconstitutional or illegal acts of its employees. *Bagg,* 726 S.W.2d at 584 (UTMB was immune from suit that alleged its employees committed "constitutional torts" against the plaintiff).

Going agrees that Harris County cannot be held vicariously liable under the theory of respondeat superior for the unconstitutional acts of its employees. He argues, however, that because he was "demoted and then terminated by a high-ranking official directly accountable to the Harris County electorate," the constitutional violation is attributable to Harris County. He relies upon *Monell v. Department of Social Serv.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1977), which holds that although a local government may not be sued under 42 U.S.C. § 1983 for an injury inflicted solely by its employees or agents, it may be liable when "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." Going asserts that Fonteno was a final policymaker in his case, and that Fonteno's approval of Going's termination constituted the policy or custom of Harris County.

 *Monell* applies to suits brought under 42 U.S.C. § 1983. Texas has no statuto-ry equivalent to 42 U.S.C. § 1983, and Going has cited no authority for the proposition that the *Monell* standard for determining the liability of a governmental unit based on the unlawful acts of its public servants applies in this case. However, even if we were to apply the *Monell* standard, we would not find that there is a constitutional violation attributable to Harris County.

Stutts terminated Going. Fonteno and the county resolution committee ratified this decision. The jury found Stutts *did not* terminate Going in violation of his right to free speech. Even assuming that Fonteno was a final policy maker, if Stutts, the person directly responsible for the termination, did not violate Going's constitutional rights, the ratification of such action cannot constitute a violation of those rights.

We sustain point of error 11. In light of our disposition of this point, we need not address the remainder of Harris County's points of error.

## Going's cross-points

### 1. Remand

In cross-point one, Going asks that if he cannot be reinstated, we remand the case to determine whether he should be awarded front pay. In light of our disposition of Harris County's point of error 11, we overrule this cross-point.

### 2. Failure to submit issue under 42 U.S.C. § 1983

In cross-point two, Going asserts the evidence was sufficient to submit an issue to the jury regarding his claims against Harris County and Commissioner Fonteno under 42 U.S.C. § 1983. The trial court granted a directed verdict on Going's first amendment claim "to the extent that [it] is asserted as a cause of action for wrongful discharge or reinstatement. . . ." Going does not complain that the trial court erred in directing a verdict on this issue, or that the trial court erred in directing a verdict in favor of Fonteno on all issues; he complains that the trial court refused to submit a jury question on his first amendment claim. We understand

this cross-point to mean the trial court erred in granting a directed verdict on this issue.

When reviewing a directed verdict, an appellate court must determine whether there is probative evidence in the record to raise a fact issue on the matter at issue. *Szczepanik v. First Southern Trust Co.,* 883 S.W.2d 648, 649 (Tex.1994); *St. James Transp. Co. v. Porter,* 840 S.W.2d 658, 661 (Tex.App.—Houston [1st Dist.] 1992, writ denied). The court must consider the record in the light most favorable to the party against whom the verdict was instructed, and must disregard all evidence and inferences contrary to that party. *Szczepanik,* 883 S.W.2d at 649. When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Collora v. Navarro,* 574 S.W.2d 65, 68 (Tex.1978); *St. James,* 840 S.W.2d at 661.

### A. Fonteno

Fonteno is not a party to this appeal because he did not file an appeal bond. Going, as appellee, may complain by cross-point about any error between Going and any appellant. *Donwerth v. Preston II Chrysler–Dodge, Inc.,* 775 S.W.2d 634, 639 (Tex.1989); *Lone Star Ford, Inc. v. McCormick,* 838 S.W.2d 734, 742 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Because Fonteno is not an appellant, for Going to complain about error between Going and Fonteno, Going was required to perfect his own appeal. *Plas–Tex, Inc. v. U.S. Steel Corp.,* 772 S.W.2d 442, 446 (Tex.1989); *Lone Star Ford,* 838 S.W.2d at 742. Because Going did not perfect his own appeal, we have no jurisdiction of this cross-point as it relates to Fonteno. *Lone Star Ford,* 838 S.W.2d at 742.

### B. Harris County

Section 1983, the Civil Rights Act of 1871, provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The issue here is whether the county is immune from suit when the cause of action is based upon the Civil Rights Act of 1871. Although the United States Congress has established a "constitutional tort" by enacting § 1983, the states retain the power to determine whether a plaintiff may sue a state, or its political subdivision, in a state court for claims arising out of that tort. *Bagg,* 726 S.W.2d at 586. In *Bagg,* our sister court held that the state is immune from a § 1983 suit. *Id.; but cf. Texas Educ. Agency v. Leeper,* 843 S.W.2d 41, 49 (Tex.App.—Fort Worth 1991) (for purposes of § 1983 suits, a school district is not recognized as an agency of the state by federal courts, but is considered a local governmental body; state court has jurisdiction to entertain a direct suit under § 1983 against school district), *aff'd in part on other grounds, rev'd in part on other grounds,* 893 S.W.2d 432 (Tex.1994). We find the trial court did not err in granting a directed verdict on Going's § 1983 cause of action. Because there is no waiver of governmental immunity for the § 1983 suit, we overrule Going's cross-point one.

Even if Harris County could be sued under § 1983, we would still uphold the directed verdict. A governmental entity may be held liable under § 1983 only for acts for which the governmental entity itself is actually responsible—in other words, for acts that the governmental entity has officially sanctioned or ordered. *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988). Only those officers who have final policy-making authority may, by their actions, subject the government to § 1983 liability. *Id.* If the authorized policy makers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the governmental entity because their decision is final. *Id.* at 127, 108 S.Ct. at 926.

■ The jury found that Stutts did not violate Going's right to free speech under the Texas Constitution, which provides greater rights of free speech than the first amendment of the United States Constitution. *Davenport v. Garcia,* 834 S.W.2d 4, 10 (Tex. 1992). Going asserts Fonteno is a final policy maker, and that his ratification of Stutts' actions constitutes official action attributable to Harris County. As we have already stated, Fonteno ratified the actions of Stutts, a man who—in the eyes of the jury—did not violate Going's constitutional right to free speech. Assuming without deciding that Fonteno is a final policy maker for purposes of a § 1983 cause of action, the ratification chargeable to Harris County is the ratification of actions found to be not unconstitutional.

We overrule cross-point two.

### 3. Failure to submit "whistleblower" issues to the jury.

In cross-point three, Going asserts the trial court erred in failing to submit an issue to the jury regarding his claims under the whistleblower statute, Tex.Rev.Civ.Stat.Ann. art. 6252–16a.[1] The trial court granted a directed verdict on this issue. Again, Going does not complain that the trial court erred in directing a verdict on this issue; he complains about the trial court's failure to submit a jury question on the issue. As we did with Going's cross-point two, we understand this cross-point to mean the trial court erred in granting a directed verdict on this issue.

Going was terminated in January 1988. He brought this lawsuit in 1989. He testified he first learned of the whistleblower statute when he spoke to an attorney in 1989, and that he filed suit within two weeks of learning about the statute. He further testified that no notice of his rights under the act had been posted at his place of employment, as required by the statute. Because the trial court granted Harris County's directed verdict on this issue at the close of Going's case-in-chief, Harris County never presented evidence regarding whether a notice had been posted.

Former article 6252–16a has been codified in the Government Code. Both the former statute and the current code provide that a state agency or local government may not suspend or terminate the employment of or discriminate against a public employee who in good faith reports a violation of law to an appropriate law enforcement authority. Tex. Gov't Code Ann. § 554.002 (Vernon 1994); Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 2. Both require that a state agency or local government shall inform its employees of their rights under the act by posting a notice in a prominent place in the workplace. Tex. Gov't Code Ann. § 554.009 (Vernon 1994); Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 6. Both provide that suit must be brought no later than the 90th day after the date the alleged violation occurred, or was discovered by the employee through reasonable diligence. Tex.Gov't Code Ann. § 554.005 (Vernon 1994); Tex.Rev.Civ.Stat.Ann. art. 6252–16a, § 3.

Going admits he did not file suit within the mandated limitations period, but asserts that Harris County's failure to post the required notice either tolled the limitation period or raised a jury issue about whether suit was filed within 90 days of his discovery, through reasonable diligence, of the violation.

■ Going has cited no authority for the proposition that Harris County's alleged failure to post a notice tolls the limitations provision. Nor has he cited authority to contradict the maxim that "[u]nder our system of jurisprudence, all of us are charged with the knowledge of the statutory provisions of our law. . . ." *Falls County v. Mires,* 218 S.W.2d 491, 494 (Tex.App.—Waco 1949, writ ref'd); *see also E.H. Stafford Mfg. Co. v. Wichita Sch. Supply Co.,* 23 S.W.2d 695, 697 (Tex. 1930); *Morris v. Reaves,* 580 S.W.2d 891, 893 (Tex.App.—Houston [14th Dist.] 1979, no writ) (every person is presumed to know the law). We find the alleged failure to post the notice does not toll the limitations period.

Going also argues that Harris County's failure to post the notice raises a jury issue about whether suit was filed within 90 days

---

1. Act of May 30, 1983, 68th Leg., R.S., ch. 832, 1983 Tex.Gen.Laws 4751 (current version at Tex. Gov't Code Ann. § 554.002 (Vernon 1994)).

of Going's discovery of the alleged constitutional violation. We disagree. Going was terminated in January 1988. He appealed his termination and the county resolution committee affirmed the decision to terminate him. In March 1988, he wrote to the commissioners court, complaining about his treatment at the grievance hearing. In this letter, he asserted he was "fired for whistle blowing," that the tape of his conversation with Stutts "would show that retaliation for whistle blowing was the reason I was fired," and that he doubted his termination was "what the people who came up with the idea of whistle blowing had in mind." Thus, in March 1988, while Going may not have been actually aware of a statutory cause of action, he was nonetheless aware of facts sufficient to state he had been fired for whistleblowing. He did not file his lawsuit until 1989, more than 90 days after he was terminated, and more than 90 days after he told the commissioners court he had been fired for whistleblowing. There is no fact issue concerning whether suit was filed within 90 days of his discovery of the alleged constitutional violation.

We overrule cross-point three.

### Conclusion

We reverse the judgment of the trial court and render judgment in favor of Harris County.