**GENERAL RESOURCES ORGANIZA-TION, INC.; Otis B. Phillips; The Law Firm of Manns & Manns; Dollie Stafford Manns; Alphonso Manns; et al., Appellants,**

v.

**Glenn J. DEADMAN; William D.A. Adamson; and Westrade Commodities Party, Ltd., Appellees.**

No. 04–93–00423–CV.

Court of Appeals of Texas, San Antonio.

June 30, 1995.

Rehearing Overruled Sept. 8, 1995.

Alphonso Manns, Manns & Manns, Bloomington, for Appellants.

Glenn J. Deadman, Ronald J. Shaw, Bailey, Shaw & Deadman, P.C., San Antonio, for Appellees.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

## OPINION

HARDBERGER, Justice.

This case involves a gold scam. At the heart of the scam is a shadowy figure named Otis B. Phillips. Phillips, an ex-convict, masterminded this scheme and operated it with the assistance of an Indiana lawyer named Dollie Stafford Manns. Glen Deadman and William Adamson invested and lost $237,086.50 in the scheme. The scam was based upon a contract to sell gold at a substantial discount in a private transaction. The buyers would put down a large security deposit subject to their meeting the qualifying procedures. Inevitably the buyers would not qualify and Mr. Phillips would spend the money. That is what happened in this case. Specifically, the facts are as follows.

Appellee Glen Deadman, representing Westrade Commodities, Ltd., contacted Dollie Stafford Manns about making a purchase of gold. Ms. Manns sent Deadman an affidavit in which she stated that she had seen the gold and seen documents evidencing the ownership of the gold. Negotiations ensued and a contract was entered into between Westrade and GRO for the sale of over one million troy ounces of gold. Both Westrade and GRO were brokers in the deal. Westrade was purchasing the gold on behalf of Katag Corporation which was backed by the Bank of Foreign Economic Affairs of the USSR, Zurich Switzerland. GRO, along with numerous other "corporations", appears to have been little more than a shell from which Otis B. Phillips operated. Phillips claimed to be the "mandated representative" of the owners of the gold whom he identified as D.L. Vinton and Raymond Foster. Although both Vinton and Foster's names appear on a number of the documents in question, Phillips testified that he had never met the two men, didn't know what they looked like, didn't have phone numbers for them and didn't know their addresses. Although they were sued, neither Vinton nor Foster appeared at trial. There was also evidence that Phillips had purchased a rubber signature stamp for D.L. Vinton and Raymond Foster. A comparison of Phillips', Vinton's, and Foster's signatures reveals a remarkable similarity. It is also interesting to note that Phillips kept a phony brick of gold in his office which was actually lead covered by a thin layer of gold.

In compliance with the contract, Deadman deposited his $150,000 for the "Westrade" contract in the Manns & Manns law firm trust account. That money was then sent to Phillips personal account in San Antonio, Texas. That money was withdrawn by Phillips in cash within forty-eight hours and spent. Deadman and Westrade never received the gold. Phillips alleged that Westrade had failed to prove its financial capability to his satisfaction. This is not surprising given the fact some twenty other potential buyers of this gold had also failed to qualify, a number of them also losing their security deposits. Another contract, known as the "Sheraton Contract", involving Deadman and Richard Jones, an Englishman, was entered into at this time and met with the same fate.

Deadman, Adamson and Westrade filed suit against Phillips, GRO, Dollie Stafford Manns, Alphonso Manns and Manns & Manns alleging various causes of action. The case was tried to a jury which made the following findings:

1. GRO breached its contract with Westrade and actual damages of $24,505,000.00 were awarded to Westrade.

2. Another contract between GRO and Sheraton Enterprises Trust was breached by GRO. As a result of that breach, Deadman and Adamson were damaged in the amount of $6,680,689.42.

3. Otis Phillips, GRO, Dollie Stafford Manns, Alphonso Manns and the Law Firm of Manns & Manns engaged in fraudulent conduct. For their fraudulent conduct, each party was assessed $31,185,689.42. in dam-

ages. Each party was assessed $100,000,000.00 in exemplary damages.

4. The plaintiffs deposited $237,086.50 in the trust account of the law firm of Manns & Manns as part of a good faith security for the contract. The Manns breached their fiduciary duty to the plaintiffs. Actual damages in the amount of $237,086.50 were assessed. The jury also imposed $100,000,000.00 in punitive damages against the Manns for breach of fiduciary duty.

5. The jury also found that GRO, Future Acceptance Corp., Red Cobra Club, Inc. were alter egos of Otis Phillips.

The trial court granted a partial remittitur and entered judgment.

### Jurisdiction.

■ In their first point of error, appellants allege that the trial court did not have jurisdiction pursuant to 7 U.S.C. § 23, 25. The appellants argue that the federal courts have exclusive jurisdiction for any actions brought under this federal statute.

The Commodity Exchange Act (CEA), 7 U.S.C. § 1 *et seq*, is a comprehensive regulatory structure overseeing the "volatile and esoteric futures trading complex." *Merrill Lynch, Pierce Fenner & Smith v. Curran*, 456 U.S. 353, 356, 102 S.Ct. 1825, 1828, 72 L.Ed.2d 182, 187 (1982). The CEA was intended by Congress to preempt the regulation of commodity futures trading. *Paine, Webber, Jackson & Curtis, Inc. v. Conaway*, 515 F.Supp. 202, 211 (N.D.Ala.1981). The legislative history of the amendments to 7 U.S.C. § 25 shows that "Congress evidently wanted to make clear that violations of *the Act* could be redressed only through procedures specified in the Act. It did not intend to extinguish state common law claims that do not arise from the Act." *Sall v. G.H. Miller & Co.*, 612 F.Supp. 1499, 1504 (D.C.Colo.1985). *See e.g., Kerr v. First Commodity Corp. of Boston*, 735 F.2d 281 (8th Cir.1984) (holding that the CEA does not preempt punitive damages for common law fraud in commodities cases); *Kotz v. Bache Halsey Stuart, Inc.*, 685 F.2d 1204, 1207–08 (9th Cir.1982) (retention of common law fraud actions is not inconsistent with regula-

tory scheme established by the Act). The present case does not involve a futures contract within the context of a commodity exchange. Therefore, it does not appear that this contract is covered by the CEA. Even if it were, the foregoing cases make clear that a common law fraud action brought pursuant to the contract would not necessarily be preempted. *See Mallen v. Merrill Lynch Futures, Inc.*, 623 F.Supp. 203 (D.C.Ga.1985). Therefore, we conclude that this case is not preempted by the CEA.

■ Appellants also complain in a very cursory manner about the trial court's denial of its motion to dismiss on the basis that the venue selection clause in the contract fixed venue in the United States District Court, Western District of Texas. According to appellants, the state district court in this case did not have jurisdiction to proceed due to the choice of venue provision in the clause.

Traditionally, Texas courts have held that forum selection clauses are prohibited by public policy when they conflict with the venue statute. *See Fidelity Union Life Insurance Co. v. Evans*, 477 S.W.2d 535, 537 (Tex.1972). Recently, some Texas courts have begun enforcing these clauses. *See Greenwood v. Tillamook Country Smoker, Inc.*, 857 S.W.2d 654 (Tex.App.—Houston [1st Dist.] 1993, no writ); *Barnette v. United Research Co., Inc.*, 823 S.W.2d 368 (Tex. App.—Dallas 1991, writ denied). There is no need for this court to decide whether this particular forum selection clause is prohibited by public policy. Even the recent cases which enforce these clauses note that forum selection clauses do not deprive a court of jurisdiction that otherwise would have jurisdiction. *See Barnette*, 823 S.W.2d at 370; *Greenwood*, 857 S.W.2d at 656. In both *Barnette* and *Greenwood*, the courts were reviewing lower court decisions not to exercise jurisdiction and dismiss lawsuits based on forum selection clauses. Here the trial court chose to exercise its jurisdiction and denied the motion to dismiss. The court had jurisdiction. The defendant, Phillips, was a resident of Texas. Defendant General Resources Corporation was a Texas domiciliary. The contract was entered into in Texas. The parties agreed to apply Texas law. The law-

suit alleged Texas common-law claims of breach of contract, fraud and breach of fiduciary duty among other things. The Texas court had both personal and subject matter jurisdiction over this claim.[1] Because a forum selection provision of a contract does not necessarily deprive a court of jurisdiction, we cannot say that the trial court erred in denying the appellant's motion to dismiss for want of jurisdiction.

We overrule appellant's first point of error.

## Severance and Summary Judgment

In their second point of error, appellants allege that the trial court erred in denying their motion to sever and motion for summary judgment. The Manns filed a motion to sever them from the suit against Phillips and GRO. The Manns also filed a motion for summary judgment concerning the claims against them and their law firm. The trial court denied the motion to sever and the motion for summary judgment.

■ Severance is proper only when the suit involves two or more separate and distinct causes of action. Each of these causes must be of a type that it could be properly tried and determined as if it were the only claim or controversy. Finally, the severed causes must not be so intertwined as to involve the same identical facts and issues. *Coalition of Cities v. PUC*, 798 S.W.2d 560, 564 (Tex.1990); *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 658 (Tex.1990). When deciding a motion to sever, the trial court has broad discretion and its decision will not be reversed in the absence of an abuse of that discretion. *Guaranty Federal*, 793 S.W.2d at 658. In this case, the appellants have failed to show that the trial court abused its discretion. The actions against the Manns and Phillips and GRO were separate and distinct causes of action which could be tried separately. However, the allegations of the plaintiffs make clear that the Manns were an integral part of the fraudulent scheme. Clearly, the causes of action at issue are so interwoven as to require introduction of evidence on the same facts and issues. We hold that the trial court did not abuse its discretion in denying the Manns motion to sever.

■ Appellants also complain about the trial court's denial of their motion for summary judgment. The motion for summary judgment was not brought forward in the record of this appeal. The order denying the severance also denies the summary judgment. When a party unsuccessfully moves for summary judgment and subsequently loses at a trial on the merits, the order denying the motion is not appealable. *See Brownsville Navigation Dist. v. Izaguirre*, 800 S.W.2d 244, 249 (Tex.App.—Corpus Christi 1990, no writ). We overrule appellant's second point of error.

## Jury Argument

■ In their third point of error Appellant's complain that the appellees' lawyer engaged in improper jury argument. Appellants specifically complain about appellees use of the word "scam" during argument and also a references by the lawyer that appellants attorney was Catholic and that defendant Phillips had other judgments against him involving similar schemes.

■ When claiming improper jury argument the appellant must prove: (1) that there was error; (2) that was not invited or provoked; (3) that was preserved by the proper trial predicate, such as an objection, a motion to instruct, or a motion for mistrial; and (4) that was not curable by an instruction, a prompt withdrawal of the statement, or a reprimand by the trial judge. *Lone Star Ford, Inc. v. Carter*, 848 S.W.2d 850, 853 (Tex.App.—Houston [14th Dist.] 1993, writ denied). Appellants cite a number of times during voir dire and opening state-

---

1. It should also be noted that appellants' unsuccessfully attempted to remove this case to federal court. The federal court declined to take jurisdiction. The parties agree that there were at least two attempts to remove this case both of which were unsuccessful. However, the record does not reveal what the basis for the attempted removal was. This record does not contain a copy of either the removal or remand motions and the federal court's order. Although we do not know the exact basis for the court's decision, we do know one thing, the federal district court did not believe it had jurisdiction.

ments that the word "scam" was used. There were no objections. Once during voir dire, appellee's counsel told the panel that he was Catholic. Again there was no objection. During closing arguments appellee's counsel argued about the evidence that there were other judgments against Phillips arising out of a similar scheme. Appellants did not object. In none of the instances of alleged improper jury argument did appellants object. By failing to object, or move the court for either an instruction or a mistrial appellants failed to preserve their claim of erroneous jury argument. TEX.R.APP.P. 52. We overrule appellant's third point of error.

## Business Records

■ In point of error four, appellants argue that the trial erred by admitting into evidence a number of documents which are alleged to be hearsay. Specifically, appellants complain about several letters written either by or to parties not involved in this litigation or payment orders to entities not parties to this case. Appellees argue that the letters and payment orders were admitted as business records.

■ The admission or exclusion of evidence is left to the discretion of the trial court. The standard when reviewing a trial court's evidentiary decision is abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 810 (Tex.1983); *Tracy v. Annie's Attic, Inc.*, 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied). The appellant has the burden to show that, in addition to being erroneous, the trial court's ruling was calculated to cause and probably did cause the rendition of an improper judgment. TEX. R.APP.P. 81(b)(1); *Boothe v. Hausler*, 766 S.W.2d 788, 789 (Tex.1989). Reversible error does not usually occur in connection with an evidentiary rulings unless the whole case turns on the particular evidence admitted or excluded. *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470, 493 (Tex. App.—Dallas 1987, writ denied); *Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 837 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.).

Admission of business records is allowed as an exception to the hearsay rule if the records were made at or near the time of the event recorded in the record, or from a person with knowledge, if the record is kept in the course of a regularly conducted business activity, and if it was the practice of the of that business activity to make the record. TEX.R.CIV.EVID. 803(6); *GT & MC, Inc. v. Texas City Refining, Inc.*, 822 S.W.2d 252, 257 (Tex.App.—Houston [1st Dist.] 1991, writ denied). In this case, appellees offered the documents through plaintiff Glenn Deadman as custodian of records for Westrade Commodities, Pty. Appellants objected to the documents in question on the basis that they are hearsay. However, appellant wholly failed to object or in any way point out why the documents in question did not qualify as business records. Further, appellants have failed in their briefs in this court to explain why these documents are not business records. We conclude that the appellants have failed to demonstrate that the trial judge abused his discretion in admitting the documents in question.

We overrule appellants fourth point of error.

## Attorney-client privilege

■ Appellants argue in their fifth point of error that the trial court erred by admitting into evidence over Otis Phillips objection attorney-client privileged communications. Specifically, the plaintiffs introduced into evidence several letters between Otis Phillips and his lawyer Dollie Stafford Manns concerning potential buyers for Mr. Phillips alleged gold including the plaintiff in this case. At trial, Phillips did not object to the introduction of the letters. However, the Manns did object. The defendants were represented by different lawyers. At no time in the discovery process or during trial did Phillips object.

■ The attorney-client privilege may be waived by the client, his guardian or conservator, the personal representative of the deceased client, or the successor, trustee, or similar representative of a corporation, association, or other organization, whether or not in existence. The person who was the lawyer or the lawyer's representative at the time

of the communication is presumed to have authority to claim the privilege but only on behalf of the client. TEX.R.CIV.EVID. 503(c). *See, e.g., Bearden v. Boone,* 693 S.W.2d 25, 28 (Tex.App.—Amarillo 1985, orig. proceeding). The Manns could not assert the attorney-client privilege on their own behalf.

Although not briefed by the parties, it also appears to this court that there may not be a privilege to assert. In the present case, the jury found that the defendants were engaged in a fraudulent scheme. The documents admitted into evidence have direct bearing on that fraudulent scheme and are some evidence of the scheme. It is well established that there is no privilege if the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud. TEX. R.CIV.EVID. 503(d)(1). For these reasons we overrule appellant's fifth point of error.

### Charge Error

■ In their sixth point of error appellants complain that the trial court erred in failing to submit their proposed instructions to the jury. In particular, appellants complain about the failure to submit an instruction that mere expression of opinion by an attorney is not a representation on which a party may rely. They also complain about other proposed jury instructions concerning attorney-client rights and responsibilities. Appellants tendered to the trial court some fifty-eight (58) proposed jury instructions all of which were refused by the trial court. However, appellants appear to complain only about proposed instructions 2, 9, 10, 32, 35, 36, and 38 in this point of error.

■ In this case, because the appellant complains that the trial court erred in not submitting its requested instructions the question is whether the request was reasonably necessary to enable the jury to render a proper verdict. TEX.R.CIV.P. 277; *see Johnson v. Whitehurst,* 652 S.W.2d 441, 447–48 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). The standard of review is abuse of discretion. *See Texas Employers' Ins. Ass'n v. Charles,* 381 S.W.2d 664, 668 (Tex. Civ.App.—Texarkana 1964, writ ref'd n.r.e.).

Appellants have failed to show that the trial court abused its discretion. The numerous requested instructions were unnecessary to enable the jury to render a proper verdict. Parties are not entitled to have every single statement of law which might be helpful to their case submitted to the jury as an instruction or definition. This is especially true when the volume and duplication of the proposed instructions would require the jury to read what amounts to a short novel.

We overrule appellant's sixth point of error.

### Factual Insufficiency

■ In point of error seven, appellants allege that the jury's answers to the liability questions are not supported by factually sufficient evidence. In considering a factual sufficiency point, we assess all the evidence and reverse for a new trial only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ Appellants complain about the factual sufficiency of the jury's answers to questions 1(A) and (B); 3(A); 5(1), (2), (3), (4), and (5); 6; 10(1), (2), and (3). This is a multifarious point of error and is in violation of T.R.A.P. 74(d). However, we will not order a rebriefing but instead note the deficiency. We will review the evidence under separate subject matter groupings.

#### Breach of Contract

■ Questions 1(A) and (B) ask the jury who breached the contract. The jury found that General Resources Organization, Inc. breached the contract and that Westrade Commodities, Pty. Ltd. did not.

There is evidence that appellees found a buyer who was financially capable of performing and that Phillips and GRO, through the Manns, kept changing the verification process in order to make it impossible for the buyer to ever qualify. At one point, Phillips

demanded as part of the verification process that the buyer provide to Otis B. Phillips an unsecured, unconditional letter of credit in the sum of between $35 and $50 million dollars to permit Phillips to buy land anywhere in the United States.

■ In question 3(A) the jury was asked whether GRO breached the contract between itself and Sheraton Enterprises. There is evidence with regard to the "Sheraton" contract that GRO represented that the contract was complete, the financial capability letter was verified, and the Sheraton Contract was approved. The only outstanding matter before the Sheraton Contract could close was the necessity for the $150,000 good faith security deposit which was paid. However, the gold was never delivered and the money was never returned. We find there is sufficient evidence supporting the jury's findings with regard to breach of contract.

### Fraudulent Representations

■ Question 5(1)(2)(3)(4)(5) deal with whether the defendants made false or misleading statements. The jury found that Phillips, GRO, Dollie Manns, Alphonso Manns and the Law Firm of Manns & Manns all engaged in fraudulent conduct. Question 5(1) involves Otis B. Phillips who did not appeal. In Question 5(2) the jury found that GRO made false or fraudulent representations of material fact. There is evidence that Otis B. Phillips represented that he was the CEO of GRO and authorized to sell 7.5 million ounces of gold by the owners of the gold. The mandate authorizing GRO to sell the gold was never produced. Phillips, on behalf of GRO, testified that D.L. Vinton and Raymond Foster are the owners of the gold. Further, there was some evidence that Otis Phillips, D.L. Vinton, and Raymond Foster are all the same person. Furthermore, the jury could logically infer that GRO never owned or had authority to sell any gold because the alleged gold doesn't exist.

■ In Question 5(3) the jury found that Dollie Stafford Manns made false or fraudulent representations of material facts in connection with the contracts in question. An affidavit of Dollie Stafford Manns was put into evidence. In this affidavit Manns stated that she had viewed the gold, had viewed confidential documents of the sellers and viewed negotiable warehouse receipts evidencing the existence of one (1) million troy ounces of gold. Also in evidence is a letter written two months before the affidavit in which Mrs. Manns states that "Mr. Phillips has never seen the gold. Dollie Stafford Manns, the legal signatory, cannot give an attorney's affidavit that she had personal knowledge of the product, but instead can only say that Mr. Phillips told me. Any judge in the land would say to me that you encouraged these people to pay a security deposit into a personal account without knowledge of the product. You have never spoken to a banker, bank officer, seller or looked at insurance policies."

The evidence shows that the appellees relied on the statements and representations of appellants, incurred substantial expense by depositing $237,000.00 as a good faith security deposit, incurred travel expenses and, due to the failure of appellants to close the transaction, forfeited their commissions.

### Breach of Fiduciary Duty

■ The jury found in Question 10(1) that the law firm of Manns & Manns breached a fiduciary duty, if any, which was owed to Glenn J. Deadman, William D.A. Adamson and/or Westrade Commodities, Pty. Ltd. The Texas Supreme Court has recognized the difficulty of formulating a definition of "fiduciary" that is sufficient to cover all cases. *Crim Truck & Tractor v. Navistar Intern.*, 823 S.W.2d 591, 593 n. 3 (Tex.1992). In Texas, certain informal relations may give rise to a fiduciary duty. These informal fiduciary relationships have been called "confidential relationships" and may arise "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic or merely personal one." *Crim Truck & Tractor*, 823 S.W.2d at 594; *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951). Confidential relationships exist in those cases "in which influence has been acquired and abused, in which confidence has been reposed and betrayed." *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980). The existence of confidential relationships is usu-

ally a question of fact. *Crim Truck & Tractor,* 823 S.W.2d at 594.

According to the evidence, during the negotiations surrounding the Westrade and Sheraton contracts the Manns provided the appellees with a financial capability letter in which they stated that the Sheraton contract would be validated. They further provided a guarantee which was placed in Manns & Manns trust account, guaranteeing that in the event that appellees paid to Manns & Manns trust account the sum of $150,000.00 as a good faith security deposit, this money would be guaranteed by Swiss Bank Corporation. Appellees placed a $150,-000 security deposit in the Manns & Manns trust account pursuant to their agreements. Manns & Manns then paid the money directly to Otis Phillips' personal account. Otis Phillips withdrew this money in cash within forty-eight hours of receiving it. Furthermore, Dollie Stafford Manns swore in an affidavit on Manns & Manns letterhead and notarized by Alphonso Manns that she had seen the gold and seen documentation evidencing the existence of 1,000,000 troy ounces of gold. We find there is sufficient evidence to support the jury's finding that Manns & Manns, Dollie Stafford Manns and Alphonso Manns breached a fiduciary relationship with appellees. We overrule appellant's seventh point of error.

### Damages

In their seventh point of error, appellants allege that there is factually insufficient evidence to support the jury's findings of compensatory and exemplary damages and attorney's fees. Appellants point to a contractual provision which purports to limit liability for breach of the agreement to 20% of the fixed security deposit of $150,000. Appellants have waived this complaint. Appellants failed to ask the trial court to enforce the liquidated damages provision of the contract in a motion for judgment n.o.v. or in their motion for new trial. Furthermore, appellants failed to request an instruction on the liquidated damages provision. By failing to bring this provision to the trial court's attention at the appropriate time, appellant's have waived it. Tex.R.App.P. 52(a).

The appellants claim that all of the damages awarded by the jury are supported by insufficient evidence. In the absence of a contrary agreement, the non-breaching party to a contract is entitled to all of its actual damages necessary to put it in the same economic position it would be in had the contract not been breached. *See General Electric Supply Company v. Gulf Electroquip, Inc.,* 857 S.W.2d 591, 599 (Tex. App.—Houston 1993, no writ). If there is some evidence in the record supporting the jury's verdict on damages then the award must be upheld. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). In the present case, there was evidence that the damages resulting from the breach of contract were exactly the amount found by the jury. There was evidence that the damages to GRO resulting from the breach of contract was $24,-505,000.00. The evidence was that Deadman and Adamson suffered damages in the amount of $6,680,689.42. There is sufficient evidence to support the jury's verdict concerning actual damages.

In reviewing this award of punitive damages for factual sufficiency we consider "the nature of the wrong, the character of the conduct involved, the degree of the culpability of the wrongdoer, the situation and the sensibilities of the parties concerned, ... the extent to which such conduct offends a public sense of justice and propriety." *Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986). An award of punitive damages "rests in the jury's discretion and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion and prejudice, or that evidence has been disregarded." *Aetna Casualty & Sur. Co. v. Joseph,* 769 S.W.2d 603, 607 (Tex.App.—Dallas 1989, no writ). Although the amounts awarded as punitive damages are large they are proportionate to the rather large amount of actual damages awarded. Furthermore, the trial court granted a very sizable remittitur. Given the egregiousness of this scheme to defraud investors of large amounts of money we feel the award of punitive damages is warranted. We overrule appellants' seventh point of error.

## Defendant's Counterclaim

■ In point of error eight appellants argue that the trial court erred in rendering judgment for the appellees because the appellees induced GRO into entering a fraudulent scheme and conspiracy to evade the laws of the U.S. The appellants allege that Glenn Deadman lied about his position with the Baker & McKenzie law firm and lied about who the buyer was and manipulated the defendants in an effort to defraud them.

■ The issue of fraud, whether presented in the context of a counter-claim or an affirmative defense is an issue for the jury. *See e.g., Eagle Properties, Ltd. v. Scharbauer,* 807 S.W.2d 714, 723 (Tex.1990); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983); *Oilwell Division, United States Steel Corp. v. Fryer,* 493 S.W.2d 487, 491 (Tex. 1973). It was appellant's burden to secure a jury finding on the issue. Furthermore it was appellant's burden to request a jury issue in substantially correct wording on the issue and to secure a ruling on it by the trial court. TEX.R.CIV.P. 278, 279. The appellant failed to do either. The appellant did file a document entitled "Requested jury issues." However, that document is in reality nothing more than an amended answer and does not comply with the requirements for submitting proposed jury questions. Furthermore, there is no endorsement on the document indicating that the trial court considered the document and refused to submit any question which might have been requested. *See* TEX. R.CIV.P. 273–276. "Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX.R.CIV.P. 279. We conclude that appellant has waived his fraud counter-claim and/or affirmative defense. We overrule appellants ninth point of error.

## Testimony of Pettay

■ Appellants argue in point of error ten that the trial court erred in not allowing defense witness Pettay to testify on the basis that his testimony was not cumulative. Appellants argue that he would have confirmed the testimony of Alphonso Manns and that he had additional evidence to offer.

The record reflects that the trial court refused to allow Pettay to testify because the appellants failed to list him as a potential witness or person having knowledge of relevant facts in response to appellees' interrogatory. Furthermore, appellants failed to supplement their answer within 30 days of trial. As a result the trial court was well within his discretion to not allow Pettay to testify. In fact, under Rule 215, the exclusion of Pettay as a witness was mandatory, unless good cause was shown to excuse its imposition. *Alvarado v. Farah Mfg. Co., Inc.,* 830 S.W.2d 911, 914 (Tex.1992). No attempt was made to show good cause. The trial court's decision to exclude the testimony was mandatory. We overrule appellant's tenth point of error.

## Evidence

■ In their eleventh point of error, appellants argue that the trial court erred in admitting a set of documents including checks, debits, cashiers checks, and memos because the probative value of the documents were outweighed by their prejudicial character.

The appellants failed to preserve any error concerning the evidence in question. The documents were admitted for the limited purpose of showing the relationship between Otis Phillips and Mrs. Manns. There was no objection to admitting the documents for that limited purpose. In order to complain on appeal about the admission or exclusion of evidence, a party must object to the admission of the evidence setting forth the specific ground for the objection and secure a ruling by the trial court. TEX.R.CIV.EVID. 103(a)(1); TEX.R.APP.P. 52. Since this was not done appellant has waived this point of error. We overrule appellants eleventh point of error.

The judgment is affirmed.

DUNCAN, J., dissents without opinion.