**GREEN TREE FINANCIAL CORP., Appellant,**

v.

**Feliciano GARCIA and Sylvia Garcia, Appellees.**

No. 04–98–00221–CV.

Court of Appeals of Texas, San Antonio.

Feb. 3, 1999.

Rehearing Overruled April 14, 1999.

Wallace B. Jefferson, Sharon E. Callaway, Crofts, Callaway & Jefferson, P.C., San Antonio, Terence A. Willis, Willis & Hougham, P.C., San Antonio, for Appellant.

Roger G. Bresnahan, Law Offices of Pat Maloney, P.C., San Antonio, John M. Castillo, Randall A. Pulman, Stumpf Falgout Craddock & Massey, P.C., San Antonio, Christa Brown, Austin, for Appellees.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice.

PHIL HARDBERGER, Chief Justice.

Green Tree Financial Corp. ("Green Tree") appeals a judgment in favor of appellees, Feliciano Garcia and Sylvia Garcia ("Garcias"), in an action for defamation and violations of the Texas Debt Collection Act and the Texas Deceptive Trade Practices—Consumer Protection Act ("DTPA"). The jury awarded the Garcias $34,562.28 in actual damages and $2,250,000 in punitive damages, finding that Green Tree acted with malice. Green Tree raises five issues in its brief, contending: (1) the Garcias are not entitled to recover punitive damages because they failed to obtain a finding supporting any legal basis upon which such damages can be imposed against a corporation; (2) the evidence is legally and factually insufficient to support the jury's finding of malice; (3) the punitive damage award is excessive and constitutionally infirm; and (4) the evidence is legally and factually insufficient to support the jury's award of $30,000 for damage to character and reputation. We conclude that the trial court abused its discretion in refusing to submit a necessary instruction, and we reverse the trial court's judgment and remand the cause to the trial court for a new trial.

## FACTUAL AND PROCEDURAL HISTORY

The Garcias purchased a mobile home financed by Green Tree on or about September 23, 1993. The Garcias were required to pay 240 monthly payments of $545.55 beginning October 10, 1993.

In December of 1993, Green Tree forceplaced property insurance for the Garcias based on Green Tree's belief that the Garcias did not have insurance coverage. When Green Tree forceplaces insurance, it obtains a policy that provides coverage for one year and pro-rates the premium over a ten month period, adding the additional premium payment to the customer's regular monthly payment. An account history of the Garcias' account was entered into evidence, and Elizabeth Pena, the collections manager for Green Tree in San Antonio at the time of trial, testified that insurance was forceplaced on the account in December of 1993, February of 1995, and December of 1995. The additional insurance premiums that went unpaid by the Garcias caused an arrearage to accrue in the Garcias' account. Although the account history reflected that the Garcias' account was charged premiums for the forceplaced insurance, Green Tree was unable to produce any documentation to show that the insurance had actually been purchased. In addition, the Garcias introduced evidence that they had insurance coverage during at least part of the period Green Tree contended that insurance coverage had lapsed.

Notices of default and intent to accelerate letters were sent to the Garcias in September of 1995, December of 1995, January of 1996, and March of 1996. Feliciano Garcia testified that Mary Lou Valdez, a Green Tree collector, began calling his home in December of 1995 and would call three and four times a day. Despite inquiries into the nature of the arrearage and protestations that all monthly payments were made, the Garcias testified that Green Tree failed to provide them with an explanation of how the arrearage had accrued or any notice that insurance had been forceplaced on their property. Feliciano Garcia testified that during these conversations, Valdez called his wife "stupid." When Feliciano requested to speak to Valdez's supervisor, Michael Tarte, Feliciano

testified that Tarte's first statement was: "I'm going to sue your ass." Feliciano further testified that Tarte complained that he was tired of "you people not paying me, trying to get out of paying me." Tarte was the collections manager in San Antonio at the time of this dispute. Tarte denied making any such statements or ever using profanity in handling customer complaints. In addition to the calls made to the Garcias' home, Feliciano's supervisor was contacted by Green Tree at work and was told that Feliciano was behind on his mortgage payments. Feliciano testified that his supervisor relayed this information to him in front of other employees, telling him to take care of his problems.

Green Tree also reported the Garcias' alleged delinquency to the credit bureau. As a result, Sylvia was denied credit in her effort to purchase a sewing machine to supplement the Garcias' income. In addition, Sylvia was informed that she could not co-sign a loan for her son until she produced a letter from her attorney stating that the account was in dispute.

In April of 1996, Green Tree sent the Garcias a notice of acceleration, stating that the Garcias needed to vacate their home within ten days. This letter made reference to the required placement of mortgage insurance, which was not required under the parties' agreement. The Garcias hired an attorney, who sent Green Tree a letter demanding an accounting and enclosing proof of property insurance, which was required under the parties' agreement. Without responding to this letter, Green Tree filed suit against the Garcias on July 25, 1996, and the Garcias filed counterclaims for defamation, violations of the DTPA and Texas Debt Collection Act, intentional infliction of emotional distress, and usury.

The trial of the case commenced on October 3, 1997. After two days of testimony, Green Tree filed a non-suit. The non-suit followed the trial court's refusal to reconsider its ruling that the original contract between Green Tree and the Garcias, which was not produced during discovery, was not admissible as evidence. The trial court noted that discrepancies existed between the original contract and the copy produced during discovery and that the contract had been assigned by Green Tree to a third party. After the non-suit, the parties were realigned, and the trial proceeded on the Garcias' claims against Green Tree.

The trial court granted a directed verdict against the Garcias on their usury and intentional infliction of emotional distress claims. The claims relating to violations of the Debt Collection Act and DTPA were submitted to the jury, and a verdict was rendered in the Garcias' favor. The trial court denied Green Tree's post-verdict motions, and Green Tree timely brought this appeal.

### CORPORATE EXEMPLARY DAMAGE PREDICATE

 Punitive damages can be awarded against a corporation based on an act of an employee only if: (1) the corporation authorized the doing and manner of the act; or (2) the employee was unfit and the corporation was reckless in employing him; or (3) the employee was employed in a managerial capacity and was acting within the scope of employment; or (4) the corporation or a manager of the corporation ratified or approved the act. *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex.1997). In its first issue, Green Tree asserts that the Garcias are not entitled to recover exemplary damages as a matter of law because they failed to obtain a jury finding on any of these legal requisites for imposing exemplary damages against a corporation. The Garcias counter that the requirement was conclusively established as a matter of law, alleviating the need to obtain a jury finding. Alternatively, the Garcias assert that Green Tree waived any error by failing to properly preserve the error during the jury charge conference.

Although Green Tree asserts in its reply brief that the issue it raises is a "matter of law" issue, not a jury charge issue, we disagree. Evidence was presented to support a jury's finding on the necessary predicates for imposing corporate liability for punitive damages. It appears from the following discussion that the trial court refused to submit the instruction because it concluded the predi-

cate requirement was conclusively established:

> MR. BLACK: And, Your Honor, Green Tree would also object to the absence of any question which would make the corporate entity liable for the acts of the employee or agent, any predicate question with regard to that.
>
> MR. BRESNAHAN: PJC—
>
> MR. BLACK: Such as—excuse me—such as imputing liability or ratifications, vice principal, anything like that.
>
> MR. BRESNAHAN: That was my question, Judge, if that was required here since we already had an admission on the stand that they were in the course and scope of their employment when they did all these things. PJC 110 31 directs that. We had two managers—right there (indicating) Subsection says managerial capacity when act was done. If there was not a finding of that already, I don't know what else—
>
> THE COURT: He is right.

If the trial court was correct, the instruction was properly refused. *See Lone Star Ford, Inc. v. McCormick,* 838 S.W.2d 734, 740–41 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (instruction on mitigation of damages properly refused where trial court determined party had no duty to mitigate). Unlike the error in *J & C Drilling Co. v. Salaiz,* 866 S.W.2d 632, 640 (Tex.App.—San Antonio 1993, no writ), which Green Tree cites as support for their "matter of law" proposition, the focus of the error in this appeal is the jury charge, not the judgment. In reviewing jury charge error, we must first consider whether Green Tree preserved the error so that it has the right to complain.

### A. Preservation of Error

Green Tree initially asserts that it did not waive the Garcias' failure to obtain the necessary jury finding because the Garcias had the burden to submit a question to elicit that finding, and Green Tree was not required to object to the Garcias' failure. In addition, Green Tree contends that it properly objected to the omission of a question relating to the issue. The Garcias counter that the predicate finding would have been submitted in the form of an instruction, not a question,

requiring Green Tree to object and submit a proper instruction. Furthermore, the Garcias assert that Green Tree failed to raise any objection at the formal charge conference, and that Green Tree's statements relating to the issue were made during an informal discussion of the preliminary instructions in the Garcias' proposed charge and were not directed at a specific question.

In order to resolve the preservation issue, we must first determine whether the predicate requirements for assessing exemplary damages against a corporation are to be submitted as a separate question or as an instruction. Texas Pattern Jury Charge 110.31 provides for the submission of the predicate requirements as an instruction to accompany the exemplary damage question. STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 110.31 (1997). Although the Texas Pattern Jury Charges are not "law," they are heavily relied upon by the bench and bar and based on what the committee perceives the present law to be. *H.E. Butt Grocery Co. v. Bilotto,* 928 S.W.2d 197, 199 (Tex.App.—San Antonio 1996), *aff 'd,* 985 S.W.2d 22 (Tex. July 14, 1998). In addition, in one recent case reviewed by the Texas Supreme Court, the predicate requirements were submitted by instruction, and the Court did not find that the submission by instruction was defective. *See Edwards v. Hammerly Oaks, Inc.,* 908 S.W.2d 270, 274 (Tex. App.—Houston [1st. Dist.] 1995), *modified,* 958 S.W.2d 387 (Tex.1997); *see also Delta Drilling Co. v. Cruz,* 707 S.W.2d 660, 662–63 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.) (submitting predicate requirements as instruction to gross negligence question). Based on the foregoing, we conclude that the predicate requirements are properly submitted as an instruction.

We must next determine whether an objection is sufficient to preserve error where an instruction on the predicate requirements for assessing exemplary damages against a corporation is omitted from the jury charge. Rule 278 of the Texas Rules of Civil Procedure states that "[f]ailure to submit [an instruction] shall not be deemed a ground for reversal of the judgment unless a substantially correct [instruction] has been

requested in writing and tendered by the party complaining of the judgment." TEX.R. CIV. P. 278. However, rule 278 must be read in connection with Texas Supreme Court precedent addressing preservation of error in jury charges.

In *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992), the Court stated: "There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." Since *Payne*, the Court has repeatedly emphasized its holding in connection with the timing of objections and the wording of requests, asserting that we should concern ourselves with common sense and not promote form over substance. *See Dallas Market Center Development Co. v. Liedeker*, 958 S.W.2d 382, 386 (Tex.1997); *Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 451–52 (Tex. 1995); *Texas Dept. of Human Services v. Hinds*, 904 S.W.2d 629, 637–38 (Tex.1995). Furthermore, in *Ramos v. Frito–Lay, Inc.*, the Court specifically addressed preservation of error relating to the submission of an issue with regard to the predicate requirement for assessing exemplary damages against a corporation. 784 S.W.2d 667, 668 (Tex.1990). In that case, as in this case, the defendant asserted that since the plaintiff failed to submit issues as to managerial capacity on which the exemplary damage award could be based, it had no obligation to object because the plaintiff had the burden to obtain findings on all necessary elements to predicate such liability. *Id.* The Court noted that since the defendant failed to object or request specific findings, the omitted element could be deemed to be found against the defendant if there was evidence to support it. *Id.* The Court's statement implies that the error could have been preserved by either a specific objection or a proper request. Allowing preservation by either approach is consistent with the holding in *Payne.* However, in light of the holding in *Ramos,* we reject Green Tree's contention that it was not required to object.

In this case, in addition to Green Tree's objection, an express reference was made to the applicable pattern jury charge provision. In addition, the trial court informed the parties that he had an instruction in response to the issue raised by Green Tree. Under these facts, we hold that Green Tree preserved error through its objection. The reference to the pattern jury charge, and the court's reassurance that he had the requisite instruction, satisfied the tender requirement under rule 278.

Having held that an objection was sufficient to preserve Green Tree's complaint, we next consider whether Green Tree made a proper objection. The Garcias contend that the only objection made by Green Tree was during the "informal" charge conference while discussing the preliminary instructions of the Garcias' proposed charge and was not directed at a specific question. Green Tree contends that the objection was sufficient to apprise the trial court of its complaint since the objection was made while the discussions were being recorded.

■ Under recent precedent, the timing of the objection does not appear to be determinative, provided that the trial court was sufficiently informed of the complaint. *See Alaniz,* 907 S.W.2d at 451. The record in this case clearly demonstrates that the trial court was aware of Green Tree's complaint. After Garcias' counsel stated that they were ready to "argue the charge," the trial court agreed and requested a copy of the charge. Upon summarily dispensing with the boilerplate language to the charge, the following exchange occurred:

MR. BLACK: I agree with that, Your Honor. But we don't think that this third paragraph about alleged corporate liability is boilerplate. The third paragraph there simply does not follow section 110.31 of the—

THE COURT: There is no argument with that. That's not PJC language.

MR. BRESNAHAN: But there is no—unless we have a concession here, I don't want to have to put that into my damages. I think the witness was on the stand, and I asked him, were you in the course and scope of employment at the time. And I'd like a finding from the Court that that is not even an issue in this case.

THE COURT: It shouldn't be. That was undisputed.

MR. BLACK: It is, Your Honor, insofar as the Garcias may be claiming exemplary damages. This is not the proper instruction with regard to corporate liability for alleged exemplary damages. Just because somebody works for somebody and makes a misrepresentation, that doesn't carry through that that is going to be corporate liability. The test is also included elsewhere in the PJC with regard to liability of a corporation. And that's another number.

THE COURT: You're talking about different things. Okay.

MR. BLACK: Okay.

THE COURT: On the corporate liability, that's for the punitive damages instruction to say that the corporation ratifying the acts, and all that language. Okay?

MR. BLACK: But I think that this is apples and oranges because this is Mr. Bresnahan's language. It doesn't come from a case. It doesn't come from the PJC. This language read by itself can impute liability just because the employee did something.

THE COURT: We can take care of that. That's not a problem. I mean the corporation acting through its servants, whatever, that's—I have an instruction on that. I can get that myself. this is—I mean, it's pretty simple stuff.

From this exchange, it appeared that the trial court intended to add an appropriate instruction to the charge. It would further appear from the reference to PJC 110.31 that the trial court intended to insert an instruction similar to the one contained in the Texas

Pattern Jury Charge.[1] In order to ensure that the instruction was added, the issue of predicate liability was subsequently raised again by Green Tree:

MR. BLACK: And, Your Honor, Green Tree would also object to the absence of any question which would make the corporate entity liable for the acts of the employee or agent, any predicate question with regard to that.

MR. BRESNAHAN: PJC—

MR. BLACK: Such as—excuse me—such as imputing liability or ratifications, vice principal, anything like that.

MR. BRESNAHAN: That was my question, Judge, if that was required here since we already had an admission on the stand that they were in the course and scope of their employment when they did all these things. PJC 110 31 directs that. We had two managers—right there (indicating) Subsection says managerial capacity when act was done. If there was not a finding of that already, I don't know what else—

THE COURT: He is right.

Given the liberal precedent on preservation that has been established by the Texas Supreme Court, we reject the Garcias' formalistic distinction between an "informal" charge conference and a "formal" charge conference. Green Tree's objections were on the record and made the trial court aware of its complaint, timely and plainly. Adopting the common sense approach advocated by the Texas Supreme Court in *Payne*, we find that Green Tree preserved the error in the court's charge through the objections quoted above.[2]

---

1. PJC 110.31 entitled "Instructions on Exemplary Damages Assessed Against Master for Acts of Servant," provides:

 Exemplary damages can be assessed against [*Don Davis*] [*ABC Corporation*] as a principal because of an act by an agent if, but only if,
 a. the principal authorized the doing and the manner of the act, or
 b. the agent was unfit and the principal was reckless in employing him, or
 c. the agent was employed in a managerial capacity and was acting in the scope of employment, or
 d. the employer or manager of the employer's ratified or approved the act.

STATE BAR OF TEXAS, TEXAS PATTERN JURY CHARGES PJC 110.31 (1997).

2. The Garcias contend that the predicate requirements for assessing exemplary damages can be deemed in support of the judgment. The Garcias cite *Ramos v. Frito-Lay, Inc.* to support this proposition. 784 S.W.2d at 668. However, rule 279 of the Texas Rules of Civil Procedure states that the trial court may deem an element that was omitted from the jury charge if the omission occurred in the absence of a request or objection by the defending party. TEX.R. CIV. P. 279. In *Ramos*, the defendant failed to object to the omission of the element; therefore, deemed findings were permitted under rule 279. 784 S.W.2d at

## B. Jury Charge Error

■ When a trial court refuses to submit an instruction, the issue is whether the request was reasonably necessary to enable the jury to render a proper verdict. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.); *General Resources Organization, Inc. v. Deadman*, 907 S.W.2d 22, 30 (Tex. App.—San Antonio 1995), *writ denied*, 932 S.W.2d 485 (Tex.1996). If the refusal is based on a determination that the request was unnecessary, we review the trial court's determination under an abuse of discretion standard. *Moran*, 946 S.W.2d at 405; *Deadman*, 907 S.W.2d at 30; *see also State Farm Lloyds v. Nicolau*, 951 S.W.2d 444, 451–52 (Tex.1997) (trial court's refusal to submit instruction reviewed for abuse of discretion).

■ The basis for the trial court's ruling, and the Garcias' argument on appeal, is that a jury finding was not required as to the predicate requirements because the evidence conclusively established that the wrongful acts for which exemplary damages were assessed were either: (1) the acts of the corporation; or (2) acts that were authorized, committed or ratified by corporate managers. Green Tree counters that the evidence does not conclusively establish that all the tortious acts underlying the liability and malice jury findings were committed by the corporation or a manager or that such acts were authorized or ratified.

Jury Question number one addressed the Garcias' claim for unreasonable collection efforts.

The question reads:

Jury Question No. 1:

Do you find that Green Tree Financial Corp. engaged in unreasonable collection efforts, if any, which proximately caused damages to Feliciano and Sylvia Garcia?

In evaluating whether Green Tree Financial Corp. engaged in unreasonable collection efforts, if any, you must consider the following circumstances, if any:

1. whether the debt collector used any profane or obscene language or language that is intended to unreasonably abuse the hearer or reader;

2. whether the debt collector placed telephone calls without disclosure of the name of the individual making the call, and with the willful intent to annoy or harass or threaten any person at the called number;

3. whether the debt collector caused expense to any person in the form of long distance telephone tolls, telegram fees or other charges incurred by medium of communication, without first disclosing the name of the person making the telephone call or transmitting the communication;

4. whether the debt collector caused a telephone to ring repeatedly or continuously or making repeated and continuous telephone calls, with the willful intent to harass any person at the called number;

5. whether the debt collector represented to a third party or any person that a consumer is wilfully refusing to pay a non-disputed debt when the debt is in dispute for any reason and the consumer has notified such debt collector in writing of the dispute; or

6. threatening to take any action prohibited by law.

The other liability questions addressed whether: (1) Green Tree collected or attempted to collect a debt by fraudulent, deceptive or misleading representations, (2) Green Tree slandered the Garcias, or (3) Green Tree engaged in any unfair or unconscionable action by collecting or attempting to collect any charge, fee or expense incidental to the obligation unless such incidental fee, charge or expense was expressly authorized by the agreement creating the obligation or legally chargeable to the consumer.

■ In order for the evidence to conclusively establish the predicate requirements for the assessment of exemplary damages, the evidence must conclusively establish that each of the acts for which liability could have been assessed by the jury was either: (1)

668. Since Green Tree did object in the instant case, a deemed finding would be improper.

authorized by Green Tree; (2) committed by an employee who was unfit and recklessly employed by Green Tree; (3) committed by a managerial employee within the scope of his employment; or (4) ratified or approved by Green Tree. *Hammerly Oaks, Inc.*, 958 S.W.2d at 391. An issue is conclusively established when the evidence is such that there is no room for ordinary minds to differ as to the conclusion to be drawn from it. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex.1982); *Jensen Const. Co. v. Dallas County*, 920 S.W.2d 761, 767 (Tex.App.— Dallas 1996, writ denied). Since the jury could have based its answer to the malice question on any one of the wrongful acts listed in the liability questions, we would need to conclude that the evidence conclusively established a predicate requirement as to each of those wrongful acts in order to accept the Garcias' reasoning.

One of the wrongful acts listed in jury question number one was the representation by the debt collector to a third party or any other person that a consumer is wilfully refusing to pay a non-disputed debt when the debt is in dispute for any reason and the consumer has notified such debt collector in writing of the dispute. The Garcias introduced evidence that Green Tree represented to both Feliciano's supervisor and the credit bureau that they were refusing to pay their debt. Therefore, the jury could have assessed exemplary damages based on its finding that Green Tree made the representation to Feliciano's supervisor with malice. Feliciano testified that his supervisor had been contacted and was told that Feliciano was not paying his debt. However, Tarte testified that he did not place that phone call and that it was against Green Tree's policy to disclose the nature of the call when speaking to a third party, such as a supervisor. Therefore, accepting that Feliciano's supervisor was contacted by Green Tree, the evidence failed to conclusively establish the predicate requirement for the assessment of damages. The Green Tree caller was not conclusively established to be a managerial employee, and the action of the caller was not conclusively established to be authorized, approved or ratified. Although there was general testi-

mony that the procedures used in collecting the Garcias' debt were standard operating procedures, Tarte specifically refuted that he had any authority to tell Feliciano's supervisor that Feliciano was behind on his debt, and denied that he had done so.

In addition, the jury could have based its liability finding, in part, on Valdez's action in calling Sylvia "stupid." The jury may well have been offended by such an action, and it could have been a reason for the punitive damage award. No evidence proved that Valdez's action was authorized or ratified by Green Tree, so punitive damages against the corporation would be improper without a finding of corporate authorization.

These are two examples of actions for which the jury could have imposed liability but could not have assessed punitive damages against Green Tree. Obviously, there was evidence of numerous actions undertaken by Green Tree and its managerial employees that would support the assessment of punitive damages, and a jury might well have assessed punitive damages against Green Tree had a proper instruction been given. But is was not, so we do not know. The trial court's error in overruling Green Tree's objection to the charge forces us to reverse the trial court's judgment and remand the cause to the trial court for a new trial. Because we reverse the punitive damage award based on Green Tree's first issue, we do not address the other complaints leveled by Green Tree against the punitive damage award in issues two, three and four.

### DAMAGES TO CHARACTER AND REPUTATION

■ In its fifth issue, Green Tree challenges the legal and factual sufficiency of the evidence to support the jury's award of $30,000 for damage to character and reputation. Green Tree attempts to differentiate between damages for loss to credit reputation and damages for loss to a person's general reputation and character. Green Tree asserts that since the Garcias failed to submit a measure of damages for loss to credit reputation, the jury did not make such an award.

Although the jury charge submitted the element of damages as damage to character

and reputation, the jury charge did not exclude the jury from including injury to credit reputation as a consideration. Given the context in which the dispute arose, excluding such damages from consideration would require a hypertechnical reading of the charge. The preliminary instructions state that "when words are used in [the] charge in a sense that varies from the meaning commonly understood," the jury is given a legal definition. Damage to character and reputation in an action for slander relating to wrongful debt collection practices would be "commonly understood" to include damage for loss to credit reputation.

In considering a legal sufficiency point, we consider only the evidence favorable to the decision of the trier of fact and disregard all evidence and inferences to the contrary. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 459 (Tex.1992). If there is more than a scintilla of evidence to support the finding, the no evidence challenge fails. *Stafford v. Stafford,* 726 S.W.2d 14, 16 (Tex.1987). In reviewing the factual sufficiency of evidence, we must assess all the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986). Under this analysis, we are not fact finders, we do not pass upon the credibility of the witnesses, and we do not substitute our opinion for the trier of fact, even if there is conflicting evidence upon which a different conclusion could be supported. *Clancy v. Zale Corp.,* 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ We find the evidence to support the jury's award is both legally and factually sufficient. Feliciano's supervisor was informed that he was behind on his mortgage payments. Feliciano's supervisor told him to take care of his problems in front of Feliciano's co-workers. Sylvia was denied the necessary credit to purchase a sewing machine and was told by Commercial Credit that there was a problem with the Green Tree account. Sylvia went to the credit union where she had been a customer for a number of years to co-sign a loan for her son. Before the credit union would permit her to co-sign the loan, Sylvia was required to explain the situation to a credit union employee and submit a letter from her attorney. This evidence is legally and factually sufficient to support the jury's award for damage to the Garcias' character and reputation.

■ Since we overrule Green Tree's sole objection to the actual damage award, we would ordinarily affirm the trial court's judgment as to the actual damage award. However, the circumstances of this case require us to reverse the entire judgment and remand the cause for a complete new trial. *See Ford Motor Co. v. Miles,* 967 S.W.2d 377, 389–90 (Tex.1998) (Gonzalez, J., concurring). A partial new trial is only permitted if the part affected by error "is separable without unfairness to the parties." TEX.R.APP. P. 44.1(b) (formerly TEX.R.APP. P. 81(b)(1)). If we remanded this case only for a reconsideration of punitive damages, the second jury on remand would not know what act or omission the first jury found liability to be based upon for purposes of determining whether that act or omission met the predicate requirements for the imposition of punitive damages. *See Ford Motor Co. v. Miles,* 967 S.W.2d at 390 (Gonzalez, J., concurring). The second jury is entitled to hear the evidence presented to the first jury, including the statements made by Valdez and Tarte, Green Tree's failure to notify the Garcias regarding the forceplacement of insurance, Green Tree's failure to explain the basis for the arrearage, Green Tree's inability to introduce evidence of the insurance it allegedly forceplaced, Green Tree's notice of acceleration and demand that the Garcias vacate their home, and Green Tree's subsequent lawsuit. The second jury is also entitled to hear Green Tree's defenses, its witnesses, and its explanation of its actions, as well as that of its employees. In short, the jury on remand must consider all of the evidence in order to determine whether the actions on which they base liability will support the assessment of punitive damages.

### CONCLUSION

The trial court abused its discretion in refusing to submit a necessary instruction in

the jury charge relating to the predicate requirements for imposing punitive damages against a corporation. Since the punitive damage award in this case is not separable from the jury's liability determination, we reverse the trial court's entire judgment and remand the cause to the trial court for a new trial. Since we would have affirmed the actual damage award if a partial new trial would have been permissible under the facts, we order that costs of appeal be taxed against the parties who have incurred them.

## OPINION ON MOTION FOR REHEARING

Opinion by: PHIL HARDBERGER, Chief Justice.

The motion for rehearing filed by Feliciano and Sylvia Garcia ("Garcias") is denied. We issue this supplemental opinion to address any misunderstanding in interpreting our earlier opinion. The reason for the reversal and remand of this case is based solely on our holding that the instruction set forth in section 110.31 of the Texas Pattern Jury Charge ("PJC") was requested and required, but not given.

■■ The Garcias initially contend that our conclusion that Green Tree properly preserved the jury charge error was erroneous because we failed to read the entire record relating to the jury charge. We read the record, but in deference to the complaints raised by the Garcias, we have re-examined it. It reveals the following.

Green Tree requested PJC 110.31. Green Tree expressly referred to it by its correct number and complained that it was not in the charge. Green Tree said the boilerplate language contained in the charge regarding course and scope was inadequate. Green Tree correctly asserted: "This is not the proper instruction with regard to corporate liability for alleged exemplary damages." The trial court then responded that counsel for Green Tree and counsel for the Garcias were talking about different things. The court noted that with respect to the corporate liability issue, "that's for the punitive damages instruction to say that the corporation ratifying the acts, and all that language." This comment by the trial court was an

appropriate response to Green Tree's request and was a short-hand rendition of PJC 110.31. There is only one instruction on punitive damages in this context: PJC 110.31. The court's response in answer to Green Tree's complaint about PJC 110.31 not being in the charge was partially in the words of PJC 110.31. It is unrealistic, given the context and words actually spoken, to imagine that the court did not understand Green Tree's complaint and the instruction it was requesting.

Nevertheless, the instruction was not given. In response to the urging of the Garcias that there was already a finding that satisfied the predicate requirements, the trial court responded: "He is right." We cannot agree—the instruction was necessary. The only remaining question with respect to the jury charge is whether Green Tree preserved the error.

"There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dept. of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex.1992). Green Tree objected twice to the absence of an instruction on the predicate requirements for assessing punitive damages against a corporation. In its first objection, Green Tree expressly referenced PJC 110.31. The trial court's statement that the punitive damages instruction would need to say "that the corporation ratifying the acts, and all that language" evidences its understanding of Green Tree's objection. Later, in reviewing the punitive damages question, Green Tree raised a second objection "to the absence of any question which would make the corporate entity liable for the acts of the employee or agent, any predicate question with regard to that … such as imputing liability or ratification, vice principal, anything like that." Garcias' counsel acknowledged that Green Tree was referring to PJC 110.31; however, Garcias' counsel argued that the predicate requirement was conclusively established, and the trial court agreed.

Green Tree's objections were timely and plain. From the trial court's response, there

is no doubt that the trial court understood the instruction Green Tree was requesting—"the corporation ratifying the acts, and all that language." Concerning ourselves with common sense and not promoting form over substance, *See Dallas Market Center Development Co. v. Liedeker*, 958 S.W.2d 382, 386 (Tex.1997), we hold that Green Tree's objections were sufficient to preserve the jury charge error.

■ The Garcias' second complaint in their motion for rehearing relates to their argument that the evidence conclusively established the predicate requirements for assessing punitive damages against Green Tree. In response to this argument, we held: "Since the jury could have based its answer to the malice question on any of the wrongful acts listed in the liability questions, we would need to conclude that the evidence conclusively established a predicate requirement as to each of those wrongful acts in order to accept the Garcias' reasoning." The Garcias assert that we can uphold the punitive damages award even if the predicate requirement is conclusively established as to just one of the wrongful acts.

With regard to the "laundry list" of wrongful acts listed in jury question number one, our prior opinion explains the reason we cannot uphold the punitive damages award. Some of the wrongful acts in which the jury could have found Green Tree engaged under jury question number one would support a punitive damages award, while others would not. We have no discrete findings and no instruction, so we do not know which wrongful act or acts listed in question number one the jury might have used as the basis for its punitive damages award. Since the jury could have based its punitive damages award on a wrongful act that would not support

such an award, we cannot uphold the punitive damages award.

The Garcias further assert that we could ignore the jury's response to question number one and uphold the punitive damages award if we found the predicate requirement was conclusively established as to the wrongful act listed in jury question number two. However, the jury could only award punitive damages if it based the award on a wrongful act that was undertaken with malice and caused harm to the Garcias. The jury was instructed to answer jury question number seven regarding whether the Garcias were harmed as a result of malice if they answered *any* of the liability questions "yes." [1] Given the instructions, the jury could have found that the wrongful acts listed in jury question number one caused harm to the Garcias as a result of malice, but that the wrongful act listed in jury question number two did not cause harm to the Garcias as a result of malice. In such a case, the jury would have responded affirmatively to jury question number seven, but the wrongful act listed in jury question number two would not support the punitive damages award because the jury did not find that it caused harm to the Garcias as a result of malice. Without separate findings as to whether each wrongful act caused harm to the Garcias as a result of malice, we cannot determine which action the jury found to be undertaken with malice to support the punitive damages award.

This court cannot uphold a jury verdict that is rendered without proper instructions. We cannot rely on a jury's award of punitive damages if the jury is not given the proper rules for assessing such damages. Where the jury is not properly instructed, its verdict could be contrary to the law by which it must be guided. The jury was not given the necessary rules to guide it, and we cannot deter-

---

1. Jury question number seven provides:
 If you have answered any of questions 1, 2, 3, or 4 "Yes", then answer Question 7; otherwise do not answer question 7.
 Do you find by a preponderance of the evidence that the harm to Feliciano and Sylvia Garcia resulted from malice?
 Malice means
 (a) A specific intent by Green Tree Financial to cause substantial injury to Feliciano and Sylvia Garcia; or

 (b) An act or omission by Green Tree Financial, (I) which when viewed objectively from the standpoint of Green Tree Financial at the time of its occurrence involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (ii) of which Green Tree Financial had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety or welfare of others.

mine from the verdict that was reached whether the jury would have awarded punitive damages if it had been given the proper instruction.

This court's decision does not "trivialize" the jury's verdict. Nothing could be more important in the legal system. But a jury must be properly instructed so that they may properly assess the facts according to the law. Appellees' motion for rehearing is denied.